STATE EX REL. HOME INSURANCE COMPANY and another, Appellants, v. BURT, Superintendent of Division of Building Inspection, City of Madison, and another, Respondents.

*March 3—March 31, 1964.*

232

For the appellants there was a brief by *Kenneth M. Kenney* and *Wolfe, O'Leary & Kenney,* all of Milwaukee, and oral argument by *Kenneth M. Kenney.*

For the respondents there was a brief by *Edwin C. Conrad,* city attorney, and oral argument by *James C. Boll,* assistant city attorney.

DIETERICH, J.  The parties stipulated that the facts contained in the petition for the writ of certiorari are the facts of the case, and those facts are as follows. The building in question is a three-family frame dwelling which was purchased by the present owners in June, 1962, for $30,000. Two policies of fire insurance were in force on the building— one issued by Home in the amount of $15,000, and one issued by Reliance in the amount of $13,000. Each policy was in the form prescribed by sec. 203.01, Stats., and each contained a "Contingent Liability From Operation of Building Laws" endorsement (commonly called a "demolition clause"), which provides in part as follows:

"In the interest of the insured the condition of this policy excluding loss occasioned by ordinance or law regulating construction or repair of buildings is hereby modified and in consideration of $——— additional premium, this company under this policy, shall, in case of fire or other perils insured against, be liable also for the loss or damage occasioned by the enforcement of any state or municipal law or ordinance which necessitates, in rebuilding, the demolition of any portion of the insured building not damaged by the perils insured against, . . ."

The building has been nonconforming to Madison zoning ordinances since November 23, 1945, in that it does not have the required area of side yards for a building of three floors of occupancy. On October 26, 1962, the building was damaged by fire to the extent of $6,337.04, and the owners notified Home and Reliance of the damage, submitting a detailed estimate of the cost of restoration. On or about November 26, 1962, the owners applied to the Superintendent of the Division of Building Inspection of the city of Madison for a permit to repair the building. The building inspector refused to issue a permit on the grounds that the repair estimate exceeded 50 percent of the assessed value, which is the maximum amount permitted to be spent under sec. 16.05 (3) (c) of the Madison city ordinances.

Following the denial of their application for a repair permit, the owners filed claims with Home and Reliance for the total insurance afforded by the two policies ($28,000) on the ground that by reason of the building inspector's refusal to issue a repair permit, they incurred a constructive total loss as a result of the fire. Home and Reliance requested the owners to join them in an appeal to the Madison Zoning Board of Appeals, but the owners declined. Subsequently, the insurers sought review and reversal of the inspector's ruling by the Board of Appeals, and the Board of Appeals denied the request for review. Home and Reliance then ob-

tained a writ of certiorari to the circuit court for Dane county.

The parties stipulated at the trial that the assessed valuation of the property in 1962 was $10,100; that the ratio for the city of Madison for assessed value to true and full value of the property is 59.64 percent; that the fair market value of the property in 1962, was not less than $24,000; and that if the present structure is removed from the lot, the value of the land will be substantially lessened.

The circuit court's memorandum decision indicates that the only question considered below was whether the Insurance Companies, having accepted a 25 percent increase in premiums for the demolition rider, may, contrary to the desires of the insured, assert the invalidity of the ordinance under which it justified the collection of the additional premium.

There are three issues raised on the instant appeal:

(1) Whether the Insurance Companies may challenge the validity of sec. 16.05 (3) (c) of the Madison city ordinances.

(2) If they may so challenge, whether that ordinance is an unconstitutional exercise of the police power.

(3) Whether the Zoning Board of Appeals ought to have granted a variance, thereby permitting repair of the building.

### Ordinance Involved.

"16.05 General Provisions. (1) *Zoning Affects Every Structure and Use.* Except as hereinafter specified, no building, structure or premises shall hereafter be used, and no building or part thereof or other structure shall be erected, raised, moved, reconstructed, extended, enlarged or altered, except in conformity with the regulations herein specified for the district in which it is located . . .

"(3) *Nonconforming Uses.* . . .

"(b) The total structural repairs and alterations, that may be made in a nonconforming structure shall not during its life subsequent to the date of its becoming a nonconform-

ing use, exceed 50 per cent of its assessed value for tax purposes at such date, unless changed to a conforming use.

"(c) Any nonconforming building . . . which has been or may be damaged by fire, . . . or act of God may be reconstructed and used as before if it be done within 12 months of such calamity, unless damaged to an extent represented by 50 per cent of the assessed value . . . in which case reconstruction shall be in accordance with the provisions of this ordinance."

(1) *Right of the insurers to challenge sec. 16.05 (3) (c).* The insurers contended at the trial that sec. 16.05 (3) (c) of the Madison city ordinances, which limits the total structural repairs and alterations that may be made in a nonconforming structure to 50 percent of its assessed value, was an unconstitutional exercise of the police power, and thus invalid. The circuit court found that the Insurance Companies waived and/or were estopped from challenging the validity of the ordinance, and a reading of the decision reveals that this conclusion was reached upon the following grounds: (1) The insurers voluntarily entered into the contract and were fully chargeable with knowledge of the ordinance; (2) they accepted a 25 percent increase in premiums in return for the demolition rider.

Inherent in the doctrine of estoppel is the requirement that an estoppel does not operate against one unless his conduct has induced another to change his position to his prejudice. *Active Co. v. Slate* (1960), 10 Wis. (2d) 340, 343, 103 N. W. (2d) 46. The circuit court quoted a similar rule from 29A Am. Jur., Insurance, p. 184, sec. 1009, to the effect that ". . . any agreement, declaration, or course of action, on the part of an insurance company, which leads an insured to honestly believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the insurance company

from insisting upon the forfeiture, . . ." In the instant action, the record is barren of any evidence that the city (the party asserting the estoppel) has acted, or changed its position, to its detriment. Indeed, the city is a stranger to the insurance contracts, and while it is conceivable that a situation might arise where an insured could assert an estoppel against his insurer by reason of the additional premiums paid for the demolition rider, such is not the case on the instant appeal.

The circuit court, after citing another rule from 29A Am. Jur., Insurance, p. 184, sec. 1010, to the effect that courts often use the terms "estoppel" and "waiver" interchangeably, stated without elaboration that the insurers waived their right to challenge the ordinance because they voluntarily and intentionally relinquished their known and existing right to decline to issue the rider. Whatever ramifications the insurers' relinquishment of their right to decline to issue the rider might have between insured and insurer, it is most difficult to see how this can have any effect upon the insurers' right to challenge an ordinance which threatens to quadruple their liability under the policies. It is true that under *Booth Fisheries Co. v. Industrial Comm.* (1924), 185 Wis. 127, 200 N. W. 775, and similar cases, one may not enjoy the benefits of a statute and thereafter escape its burdens by asserting its unconstitutionality. However, there is no apparent basis upon which to conclude that Home and Reliance obtained any benefit from the existence of sec. 16.05 (3) (c) of the Madison zoning ordinances. On the contrary, the existence and application of the ordinance serves only to broaden the scope of the insurers' liability under the standard fire policy. The insurers were adversely affected as to the extent of their liability with respect to a particular claim of loss to property by the ordinance, and to hold that they can-

not challenge such an ordinance would place them at the mercy of the insured—whose decision to challenge or not to challenge the ordinance would bind the insurer.

The city argues at length that Home and Reliance are not "persons aggrieved" by the Zoning Board's ruling, and therefore not entitled to maintain the certiorari proceedings under sec. 62.23 (7) (e) 10, 11, Stats.[1] The city's position is that the property owner, and not the insurer, would be the proper party to institute the proceedings. Under the facts of the instant action, the insurers stand to lose over $21,000 as a result of the ruling of the board, which has the effect of turning a $6,337.04 partial loss into a constructive total loss, requiring the insurers to pay $28,000, the full amount of the policies. The city's contentions on this point are without merit, for the Insurance Companies are clearly "persons aggrieved" within the purview of sec. 62.23 (7) (e) 10, 11.

(2) *Constitutionality of the application of the ordinance to the facts of the instant action.* The appellant insurers contend that sec. 16.05 (3) (c) of the Madison city ordinances, as applied to the facts of the instant action, is an unconstitutional exercise of the police power of the municipality. The trial court did not decide this point, inasmuch as it determined that the insurers were estopped from challenging the validity of the ordinance.

Sec. 16.05 (3) (c) provides in part that "any nonconforming building . . . which . . . may be damaged by fire, . . . may be reconstructed and used as before . . . unless

---

[1] Sec. 62.23 (7) *"Zoning* . . . (e) *Board of appeals* . . .

"10. Any person or persons, jointly or severally aggrieved by any decision of the board of appeals, . . . may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality.

. . .

"11. Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of appeals in order to review such decisions of the board of appeals, . . ."

damaged to an extent represented by 50 per cent of the assessed value . . . of such building[s]." The parties stipulated that the assessed value of the building in 1962, was $10,100; that the fair market value in 1962, was not less than $24,000; and that if the building is removed from the lot, the value of the land will be substantially lessened. It was also stipulated that the published ratio used by the city of Madison for determining assessed value requires that the assessed value be set at 59.64 percent of the true and full value.

The appellants' major contention on this issue centers around the use of "assessed value" as a reference point in the ordinance. The assessed valuation of the building was only 42 percent of its fair market value, and sec. 70.32 (1), Stats., which deals with the valuation of property for property taxes, provides in part that:

"Real property shall be valued by the assessor . . . at the full value which could ordinarily be obtained therefor at private sale."

This court has stated, in construing sec. 70.32 (1), Stats., that real estate must be assessed at its fair market value, and that the market value is what the property will sell for upon negotiations resulting in sale between an owner willing but not obliged to sell and a willing buyer not obliged to buy. *Estate of Ryerson* (1941), 239 Wis. 120, 125, 300 N. W. 782; *State ex rel. Evansville Mercantile Asso. v. Evansville* (1957), 1 Wis. (2d) 40, 43, 82 N. W. (2d) 899. Although the assessor's valuation must be taken as presumptively correct in proceedings attacking the assessment, this presumption gives way to undisputed competent evidence establishing a lower value. *State ex rel. Hennessey v. Milwaukee* (1942), 241 Wis. 548, 550, 6 N. W. (2d) 718, and *State ex rel. Evansville Mercantile Asso. v. Evansville, supra*. If the assessor's valuation must give way to undisputed evidence

establishing a lower value, it follows that his valuation must also yield to evidence establishing a substantially higher value. The ordinance fails to provide for any adjustments where, as here, the assessed valuation is grossly out of line. If the property were assessed at the accepted Madison ratio of assessed value to true and full value (59.64 percent), the ordinance in question would not prohibit restoration of the building, for damage up to $7,200 would then qualify as repairable. The ordinance as applied by the Zoning Board and the circuit court requires the building to be razed where the fire damage amounted to only 21 percent of its fair market value. The city concedes that if the property had been assessed according to the published Madison standards, 30 percent of market value would have to be destroyed in order to justify invocation of the ordinance, and that because of the manner of the assessment in the instant action, the ordinance was invoked where only 21 percent was destroyed. The city's argument on this point is that there should be no concern with valuation standards because the city may use any standards it chooses, as long as they are not ridiculous, and that, in any event, "market value" is of no use due to the current high prices of Madison property.

*State ex rel. Covenant Harbor Bible Camp v. Steinke* (1959), 7 Wis. (2d) 275, 96 N. W. (2d) 356, was an action involving a Lake Geneva city ordinance which provided that, "When a building containing a nonconforming use is damaged by fire . . . the total structural repairs . . . shall not . . . exceed 50 per cent of the local assessed value of the building . . ." The owners of the plaintiff Bible Camp applied for building permits after a portion of the camp had been destroyed by fire, and the application was rejected under the aforementioned ordinance. The property had not been assessed for tax purposes because exempt from taxation as a Bible Camp, and the property was classified as a nonconforming use. The owners obtained a writ of certiorari to the

circuit court to review the action of the zoning board which upheld the building inspector's refusal to issue the building permit, and the circuit court affirmed the decision of the zoning board. This court reversed for the reason that, in the situation presented, application of the 50 percent rule "might well result in a substantial loss of investment out of all proportion to the value of the building destroyed by accident." In the instant action, it is a matter of stipulation that "with the elimination . . . of the present structure from this particular lot, the land on which it is located will not have as much value for use in conformity with the existing ordinances . . . but its value would be substantially lessened if not used in conjunction with adjoining, abutting properties."

The theory underlying the "50 percent of assessed value" ordinance was stated in the *Bible Camp Case* to be as follows (p. 283):

"Evidently courts have considered that where a nonconforming use has been carried on in a building which has been accidentally destroyed in large measure, it is not unreasonable to compel the owner to conform to zoning requirements thereafter. The investment in an improvement which may not be readily adaptable to a conforming use has been taken away from him by the accident and not by the ordinance. With the improvement substantially destroyed, the land on which it is located will presumably have approximately as much value for use in conformity with the ordinance as otherwise, and the public interest in conformity with the ordinance will be served if he is not permitted to continue the nonconforming use."

The decision also discussed the question of "assessed value" as used in the ordinance (p. 284):

"In the case before us the buildings have not been assessed because the use makes the property exempt from taxation. Assessed value, however, is required by law to equal fair market value and the fair market value could be determined by evidence. We conclude that the question of whether relator

had the right to restore the family residence without changing it to a conforming use depends upon whether the fair market value of the destroyed building prior to its destruction was more than 50 per cent of the fair market value of all the buildings on the premises (excluding the cook's cabin) used by relator for its bible camp. If the value of the one building was not more than 50 per cent of the total, then relator could have 'restored' the destroyed building."

This court has held that arbitrary administration of an ordinance contravenes the provisions of the Fourteenth amendment to the United States constitution relating to due process and equal protection of the laws. *State ex rel. O'Neil v. Hallie* (1963), 19 Wis. (2d) 558, 567, 120 N. W. (2d) 641, citing *Yick Wo v. Hopkins* (1886), 118 U. S. 356, 373, 6 Sup. Ct. 1064, 30 L. Ed. 220. However, it was also stated in the *State ex rel. Covenant Harbor Bible Camp v. Steinke, supra,* page 282, that, "Ordinances of the type relied upon [*e.g.,* 50 percent of assessed value ordinances] have been generally upheld as constitutional."

It is clear that due to the apparent error in the valuation of the property, the application and operation of sec. 16.05 (3) (c) was arbitrary and oppressive in the instant action. This is not to say that the ordinance is unconstitutional on its face, but rather that its application to the facts of the instant action approaches a confiscation of property, in that it requires demolition of a building which has been damaged only to the extent of 26 percent of its stipulated market value, and consequently renders the insurers liable for a total of $28,000, rather than the estimated cost of repair, which was $6,337.04.

(3) *Whether the Zoning Board ought to have granted a variance.* Since it has been determined that the application of sec. 16.05 (3) (c) to the facts of the instant action is arbitrary and unconscionable, the question becomes one of the

proper relief to be granted. The appellants contend that the Zoning Board of Appeals ought to have granted a variance, thus permitting repair of the building. In their appeal to the Zoning Board, the insurers asked for a variance, and sec. 16.21 V-B 3 of the Madison zoning ordinances provided for the granting of variances by the board in the following situations:

"Where, by reason of . . . extraordinary and exceptional situations . . . the strict application . . . would result in peculiar and exceptional practical difficulties or exceptional and undue hardship upon the owner of such property, . . . provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of this ordinance. . . ."

In the instant action the fire damage amounted to no more than 26 percent of the fair market value of the building, and the prohibition against repair stemmed from a substantial underassessment of the property. Also, the only respect in which the building was nonconforming was the inadequacy of side yards. Faced with such a combination of circumstances, we determine that the Zoning Board's refusal to grant the variance was arbitrary and an abuse of discretion.

Therefore, the order of the circuit court is reversed and cause remanded to the Zoning Board of Appeals of the city of Madison with directions to grant the variance so as to entitle the owners of the premises to a building permit.

*By the Court.*—Order reversed. Cause remanded for further proceedings not inconsistent with this opinion.