VILLAGE OF ELM GROVE, a Wisconsin municipality,
Plaintiff-Respondent,

v.

T.V. JOHN & SON, INC., a Wisconsin domestic corpora-
tion, Defendant-Appellant,

Verdayne T. JOHN, Defendant.

Court of Appeals

*No. 92-0628. Submitted on briefs July 21, 1992.—Decided
December 9, 1992.*

(Also reported in — N.W.2d —.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas G. Kreul* of *Pfannerstill & Camp* of Wauwatosa.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Paul E. Alexy* of *de la Mora & de la Mora* of Elm Grove.

Before Nettesheim, P.J., Brown and Snyder, JJ.

NETTESHEIM, P.J.   T.V. John & Son, Inc. (T.V. John) appeals from a judgment affirming a raze order of the village of Elm Grove, declaring a wooden shed a public nuisance and imposing a $2000 forfeiture against it for violation of the village's floodplain ordinance. On appeal, T.V. John contends that the shed is a conforming structure, that the circuit court misapplied ELM GROVE, WIS., ORDINANCES 5.21(c) (1982), the fifty percent value ordinance, and that the raze order of the village building inspector was unreasonable. We are unpersuaded by these arguments, and we affirm the judgment.

The shed in question is located in the Underwood Creek Floodway, was built in 1957, and is used for stor-

ing materials for T.V. John's construction business. In June 1990, the village gave T.V. John notice that the shed could not be repaired or rebuilt in compliance with the village's floodplain ordinance and, as a result, required its removal. T.V. John applied for a building permit to make repairs, which the village denied. The village then brought an action to require the removal of the shed and to impose a forfeiture of $50 a day for as long as T.V. John violated the ordinance.

At trial, various witnesses testified as to the condition and construction of the shed. The village assessor testified that the assessed value of the shed was zero and that it was in very poor condition. The circuit court found the current assessed value of the shed to be zero and the repair costs to be $8000 dollars. It further found the shed to be a nonconforming use under the village ordinances. It also determined the raze order to be reasonable under sec. 66.05, Stats. The judgment, entered January 29, 1992, imposed a $2000 forfeiture upon T.V. John.

On February 21, 1992, T.V. John moved for reconsideration, contending in part that the circuit court erred by not interpreting the ordinance in accord with *State ex rel. Covenant Harbor Bible Camp v. Steinke,* 7 Wis. 2d 275, 96 N.W.2d 356 (1959). Following a hearing, the circuit court denied the motion. This appeal ensued. Other facts will be set forth as necessary.

T.V. John first argues that the shed is a conforming use under the ordinance. We cannot agree. The Flood Plain Zoning Ordinance, ELM GROVE, WIS., ORDINANCES ch. 6-A (1982) (ordinance), defines "Permitted Uses," in sec. 3.2:

> The following open space uses are allowed within the floodway district and in the floodway portion of the

flood plain district, provided that they are not pro-
hibited by any other ordinance . . ..:
  (a) Nonstructural commercial uses, private and
  public recreational uses and *uses or structures acces-*
  *sory to open space uses* or essential for historical
  purposes providing they are not in conflict with Sec-
  tions 3.3 and 3.4. [Emphasis added.]

Only the italicized category might arguably apply to the
shed. Section 1.433 defines "Open Space Use" as
"[t]hose uses having a relatively low flood damage poten-
tial and not involving structures."

The circuit court determined that the shed was not
"accessory to open space uses" as defined by the ordi-
nance because the use, a general contracting business,
involves structures, which are expressly excluded in the
definition of "open space use." T.V. John argues that the
permissible open space use here is the storage of materi-
als and that the shed is accessory to the yard rather than
to the business. We are unconvinced, as evidently was
the circuit court, that the ordinance envisioned or antic-
ipated that the nonconforming use ought to be subdi-
vided into narrower and narrower uses as the landowner
sees fit. We believe that the venerable law of parsimony
known as "Occam's Razor" applies here—matters must
not be multiplied beyond necessity. *See Drake v. State,*
287 S.E.2d 180, 185 (Ga.) (Weltner, J., concurring), *cert.*
*denied,* 457 U.S. 1111 (1982). We find no error in the
circuit court's rejection of T.V. John's claim that the
shed was accessory to the yard.

We further note that the shed was a nonconforming
use under yet another provision of the ordinance. Sec-
tion 3.35 prohibits "[t]he storage of any buoyant, flam-
mable or explosive materials or materials which are

likely to be injurious to human, animal, plant, fish or other aquatic life if introduced into naturally occurring or manmade watercourses . . .." On appeal, there appears to be no question that the shed was used to store buoyant materials.

T.V. John would have us read the stricture against storing buoyant materials as modified by the last clause of the section, "if introduced into naturally occurring or manmade watercourses . . .." Such a reading does not comport, however, with the plain grammar of the sentence. The ordinance prohibits the storage of four types of materials: the buoyant, the flammable, the explosive and that likely to injure life if introduced into watercourses.[1]

Correlatively, T.V. John argues that the remedy for a violation of sec. 3.35 is "a fine or abatement, not compelling removal of the shed." In support of this contention, T.V. John cites no authority. Section 3.2 of the ordinance states: "The following open space uses are allowed . . . provided that . . . the standards in Section 3.3 are met . . .." The section in question, however, is a subsection of sec. 3.3. Therefore, noncompliance with

---

[1] T.V. John's brief on appeal states that a reading such as that adopted by this court "creates an anomaly, in that storage of buoyant materials in an enclosed structure would be banned." T.V. John does not further explain just how this is any more anomalous than a reading such as its own which evidently would have the ordinance prohibit the storage of explosive or flammable materials *only* if introduced into watercourses (which would, it would seem, likely render them far less explosive or flammable). But, creating anomaly or not, the language of the ordinance is clear.

sec. 3.35 provides yet another basis for the nonconforming use determination.[2]

We turn next to T.V. John's contention that the circuit court erred by not applying *Covenant Harbor* to sec. 5.21(c) of the ordinance. We cannot agree. Section 5.21(c) reads in pertinent part:

> If any nonconforming structure or any structure with a nonconforming use is destroyed or is so badly damaged that it cannot be practically restored, it cannot be replaced, reconstructed or rebuilt unless the provisions of Section 3.0 are met. For the purpose of this subsection, restoration is deemed impractical *where the total cost of such restoration would exceed 50 percent of the present equalized assessed value of the structure.* [Emphasis added.]

The circuit court found that "[t]he current assessed value of the shed is zero dollars. It has been assessed as having a zero dollar value since 1980." In its motion for reconsideration and on this appeal, T.V. John argues that, under the *Covenant Harbor* case, the court should not have applied the fifty percent rule, as written in the ordinance, to the individual structure but rather should have read the singular noun "structure" as a plural, thereby making the comparison to the entire nonconforming use. We conclude that T.V. John has failed to demonstrate that the circuit court erred in not applying the exception set forth in *Covenant Harbor* to this situation.

In *Covenant Harbor,* 7 Wis. 2d at 276–78, 96 N.W.2d at 358–59, a fire destroyed a bible camp building

---

[2] Having concluded that the nonconforming use determination was valid on at least two bases, we need not address the other points on this issue raised by the parties.

capable of housing 75 to 100 people. While noting that ordinances of this type[3] have generally been upheld as constitutional, *see id.* at 282, 96 N.W.2d at 361, the supreme court concluded that a literal implementation of its language would work an injustice in that particular situation. *See id.* at 283–85, 96 N.W.2d at 362–63. As a result, the court chose to construe the word "building" in the ordinance "as if it were plural," *id.* at 282, 96 N.W.2d at 361, in effect reading the rule to say that the value of *all* buildings rather than just the one destroyed should be looked to. In carving out this exception, the supreme court stated:

> *The 50 per cent rule,* which may be reasonable if applied to one building containing a separate use, *may not be reasonable if applied* to an individual building used jointly with other buildings in a single nonconforming use upon one premises. . . . *Suppose* that the value of the destroyed building were only 15 or 20 per cent of the value of all relator's buildings, but that the loss of 50 per cent of the sleeping quarters of the camp would make continuance of the camp financially impossible. *Suppose* that one property is used for an institution or industry housed in several buildings, no one of which is worth as much as half the total but each of which is essential to the operation of the whole. *In situations of the type suggested the application* of the 50 per cent rule to the individual building *might well result* in a substantial loss of investment out of all proportion to the value of the building destroyed by accident. We therefore conclude that the 50 per cent rule should not be inter-

---

[3] The ordinance in *State ex rel. Covenant Harbor Bible Camp v. Steinke,* 7 Wis. 2d 275, 279, 96 N.W.2d 356, 359–60 (1959), is similar but not identical to the one at bar.

preted in accordance with the views of the respondents *in a situation such as the one before us.*

*Id.* at 283–84, 96 N.W.2d at 362 (emphasis added).

In light of this language with its repeated qualifiers, we are unconvinced that the fifty percent rule of *Covenant Harbor* is to be applied in every case involving such an ordinance. Such a limited application of *Covenant Harbor* is supported by the supreme court's discussion of it in a subsequent case, *State ex rel. Home Insurance Co. v. Burt,* 23 Wis. 2d 231, 127 N.W.2d 270 (1964). There, the court explained that in *Covenant Harbor* it "reversed for the reason that, *in the situation presented,* application of the 50 percent rule might well result in a substantial loss of investment out of all proportion to the value of the building destroyed by accident." *Id.* at 241, 127 N.W.2d at 275 (emphasis added).

We turn now to the circumstances under which the *Covenant Harbor* exception came to the attention of the circuit court here. T.V. John appears to argue that the exception was before the court from the time of its answer. The village contends that the exception was not raised until the motion for reconsideration. Our review of the record convinces us of the accuracy of the village's position.

In support of its position, T.V. John points out that its answer and counterclaim alleged, among other things, that the shed was "an integral part of and an extension of the masonry building." We conclude that while this allegation and the others proffered by T.V. John, if proved, might provide some of the factual predicate necessary for the application of the *Covenant Harbor* exception, those allegations fall far short of communicating to the trial court or opposing counsel that T.V. John expected that exception to be applied here. Furthermore,

179

neither T.V. John's Pretrial Brief nor its Post Trial Brief ever mentioned the *Covenant Harbor* case or the exception contained therein. The closest analog is an allusion in the latter to the village's contention that the shed is not a detached subordinate structure. Again, such a contention as this did not serve to raise the *Covenant Harbor* exception.

The party alleging error has the burden of establishing, by reference to the record, that the error was raised before the trial court. *Young v. Young,* 124 Wis. 2d 306, 316, 369 N.W.2d 178, 182 (Ct. App. 1985). We are unpersuaded by the record that the issue of the applicability of the *Covenant Harbor* exception was ever tried. Nor does it appear to have been raised in the trial court until the motion for reconsideration.

We turn now to that motion, which we hold was untimely filed under sec. 805.17(3), Stats., *as amended by* Wis. S. Ct. Order effective July 1, 1991. That statutory subsection, now entitled "Reconsideration Motions," provides that "[u]pon its own motion or the motion of a party made not later than 20 days after entry of judgment, the court may amend its findings or conclusions or make additional findings or conclusions and may amend the judgment accordingly." *Id.* A corresponding amendment to sec. 801.15(2)(c), Stats., effective on the same date, provides that "[t]he time . . . for making motions for reconsideration under s. 805.17(3) . . . may not be enlarged." Section 801.15(2)(c), Stats., *as amended by* Wis. S. Ct. Order effective July 1, 1991. The Judicial Council Note to that amendment states: "The amendment to sub. (2)(c) prohibits the court from extending the time for making reconsideration motions under s. 805.17(3)." Judicial Council Note, 1991, Wis. Stat. Ann. sec. 801.15 (West Supp. 1992).

Here, judgment was entered on January 29, 1992. T.V. John's Motion For Reconsideration And Notice Of Motion was filed on February 21, 1992, beyond the twenty-day limit of sec. 805.17(3), Stats. In the context of an untimely motion under sec. 805.16, Stats., our supreme court held the ensuing decision to be "void as the court lost competency to exercise its jurisdiction . . . to decide the motion for directed verdict and the motion to dismiss . . .." *Jos. P. Jansen Co. v. Milwaukee Area Dist. Bd.,* 105 Wis. 2d 1, 10, 312 N.W.2d 813, 817 (1981). More recently, our supreme court noted that "we have consistently ruled that a court's loss of power due to the failure to act within statutory time periods cannot be stipulated to nor waived." *In re B.J.N.,* 162 Wis. 2d 635, 657, 469 N.W.2d 845, 854 (1991) (footnote omitted).

Because the *Covenant Harbor* issue was not raised until the motion for reconsideration and because the motion for reconsideration was untimely, the *Covenant Harbor* issue is not properly before this court. We do not, therefore, address its merits.

Finally, T.V. John argues that the village building inspector's order to raze and remove the building under sec. 66.05(3), Stats., was unreasonable. We cannot agree.

Section 66.05(1)(a), Stats., allows the building inspector to order the owner to raze and remove a building "which in its judgment is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit . . . and so that it would be unreasonable to repair the same . . .." Subsection (b) states that repairs will be presumed unreasonable whenever the inspector "determines that the cost of such repairs would exceed 50 per cent of the assessed value of such building divided by the ratio of the assessed value to the recommended value as last published by the

department of revenue for the municipality within which such building is located . . .." Section 66.05(1)(b).

T.V. John correctly points out on appeal that *Posnanski v. City of West Allis,* 61 Wis. 2d 461, 468–69, 213 N.W.2d 51, 54 (1973), holds that "[o]nly if a property owner can show that the legislature's formula operates arbitrarily in the individual case can a court, after due consideration of the legislature's declared public policy of ridding the state of old and dilapidated buildings, make a finding that a reconstruction in excess of the 50 percent limit be allowed." That court went on to say that "[o]nly if it can clearly be said that the operation of the legislative rule is without any rational basis in the individual case may a court find that the presumption is not applicable." *Id.* at 469, 213 N.W.2d at 54.

T.V. John argues that this is such a case. We disagree. Trial evidence demonstrated the extensive deterioration of the shed. Substantial evidence was adduced to show the poor condition of the roof and the back wall. In light of the legislature's declared policy of ridding the state of old and ramshackle buildings, we are unconvinced that T.V. John has satisfied this rule from *Posnanski,* one which, we point out, that court characterized as being "the rare case indeed." *Id.*

Accordingly, we affirm the circuit court's determination concerning the raze order.

*By the Court.*—Judgment affirmed.