Delores SAWYER, special administrator of the estate of
Nancy K. Anneatra, Thomas Sawyer and Delores
Sawyer, Plaintiffs-Appellants,

v.

H. Berit MIDELFORT, M.D. and Celia Lausted,
Defendants-Respondents,†

BLUE CROSS BLUE SHIELD UNITED OF WISCONSIN, Valley
Health Plan, ABC Insurance Company and DEF
Insurance Company, Defendants.

Court of Appeals

*No. 97–1969. Submitted on briefs January 27, 1998.—Decided
March 17, 1998.*

(Also reported in 579 N.W.2d 268.)

†Petition to review granted.

795

796

798

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William Smoler* and *Gregory P. Seibold* of *Murphy & Desmond, S.C.*, Madison.

On behalf of the defendant-respondent, H. Berit Midelfort, M.D., the cause was submitted on the brief of *Thomas R. Jacobson* and *Brent R. Johnson* of *Lommen, Nelson, Cole & Stageberg, P.A.*, Hudson.

On behalf of the defendant-respondent, Celia Lausted, the cause was submitted on the brief of *Thomas J. Misfeldt* and *James W. Flory* of *Misfeldt, Stark, Richie & Wickstrom*, Eau Claire.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J. Thomas Sawyer, Delores Sawyer in her own right, and Delores Sawyer as the special administrator of the estate of Nancy K. Anneatra, appeal the grant of summary judgment that ordered the dismissal of their malpractice complaint against Dr. H. Berit Midelfort and Celia Lausted. The trial court concluded that the Sawyers' claims against Midelfort and Lausted failed to state a claim upon which relief can be granted and, alternatively, were barred by the statute of limitations. The trial court next determined that Wisconsin law applied to the estate's claims against Midelfort, but nonetheless concluded that its claims against both Midelfort and Lausted did not survive under the Wisconsin survivorship statute, § 895.01, STATS., and, alternatively, that

801

its claims must be dismissed on public policy grounds. We affirm that portion of the judgment applying Wisconsin law to the estate's claims against Midelfort. For various reasons, however, we reverse that portion of the summary judgment concluding that the plaintiffs failed to state a claim upon which relief could be granted, and that the statute of limitations and public policy grounds barred these causes of action. We therefore affirm in part, reverse in part, and remand for a trial.

This case involves alleged negligence by both Lausted and Midelfort in their treatment and care of Anneatra. The plaintiffs complain that this negligence caused Anneatra to develop allegedly false memories that her father sexually and physically abused her, that her mother physically abused her and failed to prevent her father's sexual abuse, and that various other acquaintances sexually abused her. The plaintiffs also complain that this negligence caused Anneatra to falsely believe she had multiple personalities. The Sawyers' claimed injury from this negligence stems from their daughter's public accusations of abuse. The estate's claimed injury arises out of the pain and suffering caused by the alleged false memories of abuse and out of Anneatra's belief that she had multiple personalities.

Anneatra allegedly developed these memories and was diagnosed with multiple personality disorder at about the same time in the early- to mid–1980s, when she was an adult. At a meeting in 1985 attended by Anneatra, her parents, therapist, psychiatrist, and psychiatrist's associate, Anneatra accused her parents of the abuse.[1] Anneatra then cut off virtually all rela-

---

[1] At the time of this disclosure, Anneatra's psychiatrist was Kathryn Bemmann, not the defendant, H. Berit Midelfort.

tions with her parents, except for initiating a lawsuit in 1988 for damages arising from the alleged abuse.[2] The Sawyers stated that they tried to contact their daughter and her therapist several times to further discuss these allegations, but were rebuffed. Anneatra and her parents never spoke again, and she died of cancer in 1995.

The alleged negligence involves Lausted's use of hypnosis and age regression, Midelfort's manner of treatment for Anneatra's multiple personality disorder, and Midelfort's improper supervision of Lausted. Lausted's treatment of Anneatra began in 1984, lasting until just prior to Anneatra's 1995 death. For the first nine of eleven years of treatment, Lausted was an unlicensed therapist allegedly operating under the supervision of a licensed psychiatrist. Her treatment of Anneatra took place in Wisconsin, where both patient and therapist resided.

Midelfort began treating Anneatra in 1987, and continued until late 1994. During this time, the record indicates that Midelfort's and Lausted's treatment of Anneatra was a coordinated effort, with Midelfort and Lausted discussing the case a number of times. Midelfort was licensed as a psychiatrist in both Wisconsin and Minnesota. With one exception, Midelfort treated Anneatra in her Minnesota office.

After Anneatra died, Delores was appointed administrator of Anneatra's estate.[3] She then obtained Anneatra's treatment records, and claims to have first discovered the role of Lausted's and Midelfort's treat-

---

[2] The 1988 lawsuit was apparently dismissed fairly early on, although the record does not reveal the reason for dismissal.

[3] Apparently, the Sawyers were not informed of Anneatra's death until an anonymous note appeared on their doorstep three weeks later.

ment in Anneatra's recovery of allegedly false memories after reviewing the records. Prior to that time, the Sawyers claim that they were unsure why Anneatra accused them. Shortly thereafter, in 1996, the Sawyers brought this claim on their own behalf, and Delores Sawyer brought this claim on behalf of Anneatra's estate. Lausted and Midelfort moved for summary judgment, which the trial court granted for a variety of reasons. The Sawyers and Anneatra's estate appeal.

■

In reviewing the granting of summary judgment, the appellate court adopts the same methodology as the trial court. *State v. Town of Linn*, 205 Wis. 2d 426, 434, 556 N.W.2d 394, 398 (Ct. App. 1996). Summary judgment is a question of law, *id.* at 434, 556 N.W.2d at 399, which we review de novo, *State v. Irish*, 210 Wis. 2d 107, 110, 565 N.W.2d 161, 162 (Ct. App. 1997). After examining the pleadings to determine that a claim and defense are asserted, we examine the proof submitted by the moving party to determine whether that party has made a prima facie case for summary judgment. *In re Cherokee Park Plat*, 113 Wis. 2d 112, 115, 334 N.W.2d 580, 582–83 (Ct. App. 1983).

If the moving party has made a prima facie case for summary judgment, we examine the proof submitted by the opposing party and determine whether a genuine issue exists as to any material fact. *Id.* at 116, 334 N.W.2d at 583. This court determines only whether a factual issue exists, and resolves all doubts in that regard against the moving party. *Id.* Even if there are no disputed issues of fact, summary judgment is not appropriate if reasonable alternative inferences can be drawn from the facts. *Ritt v. Dental Care Assocs., S.C.*,

199 Wis. 2d 48, 64, 543 N.W.2d 852, 858 (Ct. App. 1995).

For the sake of clarity, the defenses raised against both the appellants' claims will be discussed first, the defenses raised only against the Sawyers' claim second, and the defenses raised only against the estate's claim last.

## Defenses Against Both The Estate's And The Sawyers' Cause Of Action

Midelfort and Lausted first contend that the doctrine of laches precludes the estate's and the Sawyers' claims.[4] Midelfort and Lausted argue that by delaying a claim until Anneatra's death, the estate and the Sawyers deprived them of evidence essential to their defense. Because we conclude that the elements of laches have not been established as a matter of law, summary judgment on this ground was improper.

---

[4] It has been suggested in other cases that laches is applicable only in equitable actions, and not in legal actions where a statute of limitations exists. *See, e.g., Vogel v. Grant-Lafayette Elec. Co-op*, 195 Wis. 2d 198, 213, 536 N.W.2d 140, 146 (Ct. App. 1995), *rev'd on other grounds*, 201 Wis. 2d 416, 548 N.W.2d 829 (1996); *Suburban Motors of Grafton, Inc. v. Forester*, 134 Wis. 2d 183, 187, 396 N.W.2d 351, 353 (Ct. App. 1986) ("The timeliness of the commencement of actions at law is governed by statutes of limitations whereas equitable actions are governed by considerations of laches."). *Compare Schafer v. Wegner*, 78 Wis. 2d 127, 134, 254 N.W.2d 193, 197 (1977) (holding that laches can apply if the statute of limitations does not bar an action). Because this issue was not put before us, we do not address it.

Laches is an equitable defense to an action based on the plaintiff's unreasonable delay in bringing suit under circumstances in which such delay is prejudicial to the defendant. *See Schafer v. Wegner*, 78 Wis. 2d 127, 132, 254 N.W.2d 193, 196 (1977). For laches to arise "there must be unreasonable delay, knowledge of the course of events and acquiescence therein, and prejudice to the party asserting the defense." *Batchelor v. Batchelor*, 213 Wis. 2d 251, 257, 570 N.W.2d 568, 571 (Ct. App. 1997). If any single element is missing, laches will not be applied. Where the facts are undisputed and there is only one reasonable inference, the court may conclude as a matter of law that the elements are met. *See Schafer*, 78 Wis. 2d at 132, 254 N.W.2d at 196 (concluding that prejudice was established in that case as a matter of law). If the material facts or reasonable inferences are disputed, however, summary judgment will be improper.

We cannot conclude that laches should apply on summary judgment in this case. First, the record does not indicate as a matter of law whether the plaintiffs unreasonably delayed bringing this lawsuit. If it is true, as the Sawyers claim, that they had no reason to believe Lausted's and Midelfort's negligent treatment caused Anneatra to make her allegations, and if it is also true that they made several unsuccessful attempts to discern what caused the allegations, their delay in bringing the action until they obtained Anneatra's medical records would not appear to be unreasonable. If it is likewise true that the estate had no knowledge that Anneatra was receiving negligent treatment until shortly before filing suit, its delay would also not be unreasonable.

The third element of laches, prejudice to the parties, is also in dispute. Although Anneatra is deceased, Midelfort and Lausted apparently would be able to develop both her sincere belief that she was the victim of abuse and the date she developed those memories at trial. Anneatra's medical records, and the defendants' testimony about both the circumstances surrounding the 1985 confrontation and other allegations made during the course of treatment would appear to be adequate proof of both Anneatra's belief that the accusations were true and when the memories were formed. Further, the defendants could bring in testimonial evidence from any of Anneatra's acquaintances concerning the allegations because such statements would be indicative of her state of mind and therefore not hearsay. Section 908.03(3), STATS. The summary judgment record, however, does not indicate the extent to which such evidence is available to the defendants. We therefore cannot say whether prejudice exists as a matter of law.

The defendants also claim prejudice because Anneatra is unavailable to testify as to her pain, suffering, and loss of enjoyment of life. We are unpersuaded. Under Wisconsin law an estate can claim damages flowing from injuries caused during the decedent's life. Section 895.01, STATS. This law recognizes that such damages may be collected despite the fact that the injured party cannot testify to them. While Anneatra's inability to testify may hamper her estate's ability to prove damages, it causes the defendants no prejudice. We conclude that laches cannot bar the plaintiffs' claims on summary judgment.

Midelfort and Lausted next contend that public policy reasons bar the plaintiffs' claims. First, they

claim that a deceased's claims for emotional and purely psychological harm should be barred because it would likely open the way for fraudulent claims. For support, the defendants rely on the following language from *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 533 N.W.2d 780 (1995):

> Any time a claim is raised many years after the injury occurred, the potential for fraud is exacerbated. However, in most cases that potential is at least limited by the fact that the plaintiff is suffering from physical symptoms . . . . But here the alleged damages are all "emotional" and "psychological," with the plaintiff's experts claiming that damage exists and was caused by the defendant, and the defendant left in the position of attempting to prove either that the plaintiff is not "emotionally damaged" or that he is not the cause of that damage. While some courts may have blind faith in all phases of psychiatry, this court does not. "Nor are we convinced that even careful cross-examination in this esoteric and largely unproven field is likely to reveal the truth."

> Such circumstances are ripe for fraudulent claims even when the alleged cause of the injury occurred only weeks prior to the initiation of the suit. . . . Thus . . . allowing what could be meritorious claims of this nature does not outweigh the threat of stale or fraudulent actions.

*Id.* at 322–23, 533 N.W.2d at 788 (citations omitted). The defendants argue that allowing an estate to make a claim further increases the potential for fraudulent actions.

We do not agree that the same public policy concerns at issue in *Pritzlaff* apply here. In *Pritzlaff*, the

plaintiff alleged injuries arising from a sexual relation-ship with her priest that occurred over twenty-seven years prior to the commencement of her case. *Id.* at 310–11, 533 N.W.2d at 782. The *Pritzlaff* court was justifiably concerned that the nature of damages suf-fered as a result of the alleged harm would be difficult, if not impossible, to prove twenty-seven years after the fact. This case, however, presents a significantly differ-ent set of facts. Anneatra's injuries stemmed from alleged malpractice that took place until within a year or two of the commencement of the case. The nature of damages claimed to have been suffered as a result of the alleged malpractice—false memories of abuse and a false belief that she suffered from multiple personali-ties—is also comparably easier to determine than the nature of injuries in *Pritzlaff.*

Second, Midelfort requests us to hold that public policy precludes the estate's claim in order to prevent the entering of a field that has no sensible or just stop-ping point. Although Midelfort raises this claim in her brief, however, she offers no argument to develop it. We decline to review issues inadequately briefed. *State v. Pettit,* 171 Wis. 2d 627, 646, 492 N.W.2d 633, 642 (Ct. App. 1992).

Third, Midelfort and Lausted claim that we should deny recovery to the Sawyers for any negligence on their part because allowing recovery would put too great a burden on the tortfeasor. For support, both refer us to *Wells,* which stated:

> [S]ound public policy dictates that some limit be placed on the liability faced by negligent tortfeasors. As the law currently stands, a negligent tortfeasor may be liable not only to the victim her-self for injuries sustained, but also to the victim's spouse and minor children for loss of society and

companionship. The tortfeasor may in some instances also be liable to third parties for the negligent infliction of emotional distress. To hold that śame tortfeasor potentially liable to the parents (both parents, when applicable, could presumably bring separate claims) for the loss of an adult victim's society and companionship, is, we believe, excessive and contrary to public policy.

*Estate of Wells v. Mount Sinai Med. Ctr.*, 183 Wis. 2d 667, 677–78, 515 N.W.2d 705, 709 (1994) (footnotes omitted).

We do not agree that the same public policy considerations underlying *Wells* apply here. The *Wells* court was concerned with limiting the damages of tortfeasors by denying a certain type of psychological harm, the loss of companionship suffered by parents of an injured adult child. Here, however, we deal with the psychological harm suffered by those allegedly wrongly accused of sexually and physically abusing a child. The harm such accusations inflict cannot be easily dismissed: "Society's justifiable repugnance toward (sexual abuse of a child) . . . is the reason why a falsely accused [person] can be gravely harmed." *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 355 n.31, 565 N.W.2d 94, 111 n.31 (1997) (citation omitted). We cannot conclude that public policy requires such injured plaintiffs to go without a remedy simply because they are the parents of the accuser.[5]

---

[5] We also do not agree that this case can be compared with the situation where the defendants' negligence inflicts emotional distress on a bystander. In those situations, public policy may well prevent the recovery of purely psychological injuries. *See Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 656, 517 N.W.2d 432, 444 (1994) (person without specified family relationship barred by public policy from recovering for dam-

Midelfort next contends that Wisconsin lacks personal jurisdiction over her in both the estate's and the Sawyers' causes of action.[6] Midelfort claims that any injury arising from her treatment could not amount to a local act or omission under the Wisconsin long-arm statute because all her visits with Anneatra, with one exception, took place in Minnesota. We conclude that Midelfort's actions sufficiently demonstrate local acts and omissions, and thereby invoke Wisconsin jurisdiction.

Wisconsin provides for jurisdiction over any properly served defendant in any action claiming an injury to a person arising out of an act or omission occurring within Wisconsin by the defendant. Section 801.05(3), STATS. This jurisdictional statute is to be "liberally construed in favor of exercising jurisdiction." *Dietrich v. Wisconsin Patients Comp. Fund*, 169 Wis. 2d 471, 478, 485 N.W.2d 614, 617 (Ct. App. 1992). There is no dispute that Midelfort was properly served, and our review of the record reveals that Midelfort acted in Wisconsin. First, both she and Lausted were involved in a joint treatment plan being administered in Minnesota and Wisconsin. This is therefore not a case where Midelfort's Minnesota treatments were discrete Minnesota acts. Second, Midelfort is alleged to have

---

ages in witnessing other's suffering). Although *Wells* was not a bystander case, even if we were to assume that the public policy reasons announced in *Wells* limited the recovery of a bystander parent for witnessing injuries to an adult child, ours is not a bystander case. The injury alleged by the Sawyers is not one of witnessing their daughter suffer the injury; rather, the injury is a direct harm caused by their daughter's accusations.

[6] Lausted, a Wisconsin resident, does not join in this argument.

negligently supervised Lausted's Wisconsin therapy sessions. The supervision of a Wisconsin therapist giving therapy in Wisconsin to a Wisconsin resident is an act occurring within Wisconsin. Third, at least one of Midelfort's treatment sessions with her Wisconsin patient took place in Wisconsin. Finally, we note that Midelfort provided prescriptions to a Wisconsin resident. Cumulatively, these contacts bring Midelfort under Wisconsin jurisdiction pursuant to our liberal construction of § 801.05(3).

## Defenses Raised Only Against the Sawyers' Cause of Action

Both Midelfort and Lausted next raise defenses against the Sawyers' claims alone. First, they appear to argue that the Sawyers failed to state a claim upon which relief can be granted because defendants have no duty to protect third-parties from purely emotional injuries arising from their malpractice. We disagree. The closest case on point is *Schuster v. Alternberg*, 144 Wis. 2d 223, 230, 424 N.W.2d 159, 162 (1988). There, our supreme court held that a psychiatrist may be liable to third parties for failing to warn a patient of a medication's side effects. *Id.* at 230, 424 N.W.2d at 163. In part, this holding rested on the Wisconsin rule that "a party is negligent if it was foreseeable that the party's act or omission to act could cause harm to someone." *Id.* at 232, 424 N.W.2d at 163. Although the third party's injury in *Schuster* was physical, this fact does not relieve the defendants of their duty to prevent emotional harm to the Sawyers. Under Wisconsin law, "the doctrine of public policy, not the doctrine of duty, limits the scope of the defendant's liability." *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 644–45, 517

N.W.2d 432, 439 (1994) (addressing issue of duty to prevent purely emotional harm to bystanders). ■

In Wisconsin, a party is negligent when he or she commits "an act when some harm to someone is foreseeable." *A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 484, 214 N.W.2d 764, 766 (1974). While public policy may preclude recovery for purely emotional injuries that fall within this broad rule, we have already determined that in this case it does not. Further, although Lausted argues that she had no duty to determine the truth of what her patient was saying, she did have a duty to insure that her treatment did not cause harm to others when some harm was foreseeable. Based on these considerations, we conclude that the Sawyers stated a proper claim.

Lausted next argues that the statute of limitations, § 893.54, STATS. (injury to the person), bars the Sawyers' cause of action against her.[7] She claims that the cause of action accrued either in 1985, when Anneatra confronted the Sawyers with the claims of abuse, or in 1988, when Anneatra's complaint in her later-dismissed lawsuit stated the source of her memories were from therapy. The Sawyers contend, first, that they had three years from the last negligent act (the 1994 therapy sessions) to bring a claim, and second, that the discovery rule extended the statute of limitations until 1995, when they learned of the role of Lausted's treatment in developing Anneatra's memories.

In order for a cause of action to accrue, it must be complete. *Kolpin v. Pioneer Power & Light*, 162 Wis. 2d 1, 24, 469 N.W.2d 595, 604 (1991). "It is complete when

---

[7] Midelfort does not raise this issue in her brief.

the negligent act occurs, or the last act occurs in a continuum of negligent acts, *and* when the plaintiff has a basis for objectively concluding that the defendant was the cause of the plaintiff's injuries and damages." *Id.* (emphasis in original).

The Sawyers allege two distinct causes of action against Lausted. First, they claim that Lausted's malpractice caused them injury, including past and future pain, suffering and loss of enjoyment of life. Second, they claim that Lausted is liable for the negligent infliction of emotional distress they allegedly suffered as a result of the 1985 meeting. As to the first claim, the Sawyers allege damages arising out of a series of negligent acts. Lausted responds that any damage caused would have occurred only during the initial confrontation, and that subsequent counseling "made no difference." Whether the subsequent counseling continued to injure the Sawyers, however, is a factual determination that we do not make on summary judgment. The Sawyers allege that the continuing allegations of child abuse, brought on by the continuing negligent acts of Lausted, caused them continuing injury. Such allegations, if true, would mean that their claim did not accrue until the treatments ended in 1994. These claims therefore cannot be time barred by the statute of limitations on summary judgment.

Turning to the Sawyers' claim of negligent infliction of emotional distress, we also conclude that summary judgment was improper. A cause of action accrues not on the date of injury, but rather when the plaintiffs discovered, or in the exercise of reasonable diligence should have discovered, "not only the fact of injury but also that the injury was probably caused by

the defendant's conduct." *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 411, 388 N.W.2d 140, 146 (1986).[8] "The issue of reasonable diligence is ordinarily one of fact." *Spitler v. Dean*, 148 Wis. 2d 630, 638, 436 N.W.2d 308, 311 (1989). Summary judgment is only proper if the facts are undisputed and only one reasonable inference can be drawn from the facts. *See Hennekens v. Hoerl*, 160 Wis. 2d 144, 162, 465 N.W.2d 812, 819–20 (1991).

Lausted contends that the Sawyers should have known that her alleged negligent therapy probably caused Anneatra to accuse her parents at least by 1988 because: (1) the 1985 accusations were made in Lausted's office; and (2) the complaint in Anneatra's 1988 lawsuit against her parents stated she became aware of the abuse "as a result of counseling and treatment while hospitalized [in late 1983]." Lausted also contends that had the Sawyers used reasonable diligence, they would have discovered her use of hypnosis to develop Anneatra's memories, but that they failed to do so.

We do not agree. The facts Lausted offers to prove that the Sawyers should have known she probably caused the injury are insufficient to demonstrate this as a matter of law. First, the fact that Anneatra's accusations occurred in Lausted's office does not establish

---

[8] Lausted argues that public policy precludes the application of the discovery rule in this case. We note that no case has held that public policy could preclude the application of the general discovery rule as stated in *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 388 N.W.2d 140 (1986). *Cf. Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 303, 320, 533 N.W.2d 780, 786 (1995) (public policy can preclude the application of the "special" discovery rule that was created to protect children in actions against their parents for incest). Nevertheless, we have already concluded that public policy does not limit this cause of action.

that Lausted caused them through malpractice. On the contrary, the record suggests the Sawyers could have attributed the accusations to any number of possible causes.[9] There is no evidence that the Sawyers knew before bringing this claim what methods of treatment Lausted was even using on Anneatra. Second, the fact that Anneatra once alleged that her memories developed in late 1983 through therapy does not impute knowledge to the Sawyers that the allegedly false allegations were the result of the malpractice of Lausted and Midelfort.

We also cannot agree that, as a matter of law, reasonable diligence would have permitted the Sawyers to discover Lausted's role sooner. The Sawyers claim that they tried to contact both patient and therapist several times to further discuss the allegations against them without success. Whether this is true, and whether a reasonable person would have done more under these circumstances, are factual disputes best left to a factfinder and not to a court on summary judgment.

### Defenses Raised Only Against The Estate's Cause Of Action

Midelfort and Lausted contend that the estate fails to state a valid claim for relief. They argue that Wisconsin's survival of actions statute, § 895.01, STATS., does not permit recovery because Anneatra's only claims are

---

[9] The Sawyers claim that the allegedly false accusation could have had numerous causes apart from the defendants' malpractice, including psychiatric illness, Anneatra's involvement in survivor groups, ill will or spite, or the reading of popular literature on childhood sexual abuse.

for lost society and companionship.[10] We disagree with the defendants' representation of Anneatra's claims. The estate is not claiming damages for the loss of society of her parents, but rather for the pain and suffering due to such things as her false belief that she suffered multiple personality disorder and her "constant recovery of false memories." We therefore conclude that the estate has properly stated a claim upon which relief can be granted.

Midelfort's final contention is that Minnesota law applies and that under Minnesota law no claim for such a cause of action exists. Midelfort argues that Minnesota has an interest in applying its law because she is a Minnesota resident and she treated Anneatra in Minnesota. The estate does not dispute that there are Minnesota contacts and that Minnesota law would provide a different outcome. Therefore, we conclude that a conflict exists and proceed with the law-selecting process. *Hunker v. Royal Indem. Co.*, 57 Wis. 2d 588, 594–95, 204 N.W.2d 897, 902 (1973).

The "choice-influencing" factors followed in resolving a conflicts question are: "[1] Predictability of results; [2] [m]aintenance of interstate and international order; [3] [s]implification of the judicial task; [4] [a]dvancement of the forum's governmental interests; and [5] [a]pplication of the better rule of law." *Id*. at 598–99, 204 N.W.2d at 902. The "law of the forum should presumptively apply unless it becomes clear that the non-forum contacts are of the greater significance." *Id*. at 599, 204 N.W.2d at 902 (quoting *Wilcox v. Wilcox*, 26 Wis. 2d 617, 634, 133 N.W.2d 408, 416

---

[10] Neither Midelfort nor Lausted argue that recovery for pain, suffering, and loss of enjoyment of life is impermissible under § 895.01, STATS. We therefore do not address that issue.

(1965)). Because we conclude that no factor establishes that Minnesota law should apply, we hold that the law of Wisconsin, as the forum state, should apply.

The first factor, predictability of results, addresses the parties' expectations. *Id.* at 600, 204 N.W.2d at 903. We cannot conclude that this factor favors Minnesota. Anneatra was a Wisconsin resident who was treated by a Minnesota psychiatrist in conjunction with her Wisconsin therapist. The Minnesota psychiatrist on at least one occasion visited Anneatra in Wisconsin. Further, as we discussed earlier, the alleged negligence occurred in both Wisconsin and Minnesota. We therefore fail to see how the parties under these circumstances would expect Minnesota law to apply.

The second factor, maintenance of interstate order, requires that a minimally concerned state defer to the interests of a substantially concerned state. *Id.* at 601, 204 N.W.2d at 903–04. Under the facts of this case, Wisconsin is not minimally concerned. The plaintiff is a Wisconsin resident alleging injuries arising out of treatment in Minnesota and Wisconsin both, and alleging injuries arising out of a failure of supervision occurring in Wisconsin. Wisconsin is substantially concerned with the incidents involving its own residents and occurring, at least in part, in Wisconsin.

The third factor, simplification of judicial task, does not favor either state's law. It is true that the application of Minnesota law, which would result in the denial of the Estate's action, would not complicate the task of Wisconsin judges. *See id.* at 603, 204 N.W.2d at 904. It is also true, however, that Wisconsin courts are well equipped to apply Wisconsin law. We see no benefit in applying Minnesota law under this factor.

The fourth factor, advancement of the forum's governmental interests, clearly favors Wisconsin law. "It

is the duty of this court to favor Wisconsin's governmental interests." *Id.* Wisconsin has a strong interest in compensating the victims of malpractice, as is evidenced by its permitting such claims even after death. This interest is not reduced simply because a part of the negligence occurs in Minnesota by a Minnesota defendant.

The final factor, application of the better rule of law, is intended to review whether there is a "substantial trend" away from the other state's law in other jurisdictions. *Id.* at 606, 204 N.W.2d at 906. Unfortunately, the parties have not sufficiently briefed this issue. Midelfort cites no authority to show us the extent to which the Minnesota law is followed in other jurisdictions. The estate, on the other hand, cites 1 AM. JUR. 2D, *Abatement, Survival, and Revival* § 52 (1994), to show a general trend to permit the survival of actions. We note, however, that the same source provides that some survival statutes make a general exception for injuries to character or feelings, as compared to bodily injury. *Id.* at § 53. In any event, we conclude that this factor provides no support for Minnesota law.

Reviewing these factors, we conclude that Wisconsin law should govern. This conclusion rests on the consideration that Wisconsin's interests are more than minimal, and that this court is duty-bound to favor Wisconsin interests wherever possible. Further, we note that the contacts of Minnesota are not clearly of greater significance. Wisconsin law applies, and therefore the claim may continue.

## Conclusion

Summary judgment was improperly granted in this case. We conclude that Wisconsin courts can properly assert jurisdiction over Midelfort, and that

Wisconsin law applies to the estate's claims. We also conclude that the plaintiffs have stated valid claims against both Midelfort and Lausted, and that public policy does not preclude recovery. Finally, we conclude that summary judgment was improperly granted on grounds of laches and the statute of limitations. We remand for a trial on the merits and for resolution of these issues: (1) whether the estate and the Sawyers unreasonably delayed bringing their lawsuits under a theory of laches; (2) whether Midelfort and Lausted were prejudiced by any such delay; (3) whether the Sawyers were continually harmed by any allegations arising from continuing malpractice under a continuing negligence theory; and (4) when a reasonably diligent plaintiff would have discovered his or her cause of action against Lausted under the discovery rule.

*By the Court.*—Judgment affirmed in part; reversed in part, and cause remanded. Costs to appellants.