## CITY OF MADISON, Plaintiff-Appellant and Cross-Respondent, †

v.

## Kathleen LANGE, Defendant-Respondent and Cross-Appellant.

Court of Appeals

*No. 85–1294. Argued February 25, 1987.—Decided April 16, 1987.*

(Also reported in 408 N.W.2d 763.)

† Petition to review denied.

1

For the plaintiff-appellant and cross-respondent there were briefs by *Henry A. Gempeler,* city attorney, and *Eunice Gibson,* assistant city attorney, and oral argument by *Eunice Gibson,* assistant city attorney.

For the defendant-respondent and cross-appellant there was a brief by *Bruce F. Ehlke* and *Lawton & Cates,* of Madison, and oral argument by *Bruce F. Ehlke.*

Before Dykman, Eich and Sundby, JJ.

EICH, J. The City of Madison appeals from an order dismissing its claim against Kathleen Lange for reimbursement of general relief payments under sec. 49.08(1), Stats. (1981–82). The statute authorizes the city to recoup relief payments from welfare recipients who are, or become, "owner[s] of property." The trial court held that the city was equitably estopped from pursuing its claim. Lange cross-appeals, claiming that the court erred in denying her motion to dismiss the complaint on grounds that it failed to state a claim upon which relief could be granted.

The issue on the appeal is whether the city is estopped from seeking reimbursement because at the time Lange accepted the relief she was told by a city employee that repayment was voluntary. On the cross-appeal, the issue is whether her wages may be considered "property" within the meaning of sec. 49.08(1), Stats. (1981–82). We resolve both questions in favor of the city and reverse.

From December 1974 through October 1975, Lange received $2,449.58 in general relief from the City of Madison. Part of the money was used to pay for

3

surgical and dental treatment, and she used the rest for her day-to-day living expenses. When Lange applied for assistance she inquired about repayment and was told by a city welfare worker that it was voluntary.

Lange is single and has been employed since 1975. She owns a home valued at $53,100 which is subject to a $49,000 mortgage. In 1984, she earned $19,582 in gross wages. She anticipated 1985 earnings of $14,728.48, together with additional rental income.

When the city commenced the action in 1982, Lange moved to dismiss, arguing that her wages were not property within the meaning of the recoupment statute. The trial court ruled against her and denied the motion. At trial, Lange testified that she would not have accepted the relief money if she had known she might someday be ordered to repay it. Instead, she claimed she would have asked friends and relatives to provide her with money, food and shelter and would have declined the medical and dental surgery. The trial court concluded that this testimony was sufficient to establish a defense of equitable estoppel and dismissed the action. Other facts will be referred to below.

## I. WAGES AS PROPERTY

Our initial inquiry is whether wages are "property" within the meaning of sec. 49.08(1), Stats. (1981–82). The interpretation of a statute is a question of law and we owe no deference to the trial court's conclusions. *State v. Barnes,* 127 Wis. 2d 34, 37, 377 N.W.2d 624, 625 (Ct. App. 1985). "[O]n any question of statutory construction [we look] to the plain meaning

of the statute." *State ex rel. Ondrasek v. Circuit Ct.,* 133 Wis. 2d 177, 182, 394 N.W.2d 912, 914 (Ct. App. 1986). We may only look outside the statutory language if the statute is ambiguous. *State v. Tollefson,* 85 Wis. 2d 162, 167, 270 N.W.2d 201, 203 (1978).

Lange correctly points out that non-technical words in a statute should be given their common and generally understood meaning when they are not otherwise defined by the legislature. *State v. Ehlenfeldt,* 94 Wis. 2d 347, 356, 288 N.W.2d 786, 790 (1980). She argues that sec. 49.08(1), Stats. (1981–82), cannot reach her salary because wages do not come within the commonly-understood meaning of the word "property." However, she overlooks the fact that the word is defined in the statutes.

Section 990.01, Stats. (1981–82), sets forth the general definitions to be used in construing statutory words and phrases, so long as the stated definition does not conflict with the "manifest intent" of the legislature. Section 990.01(31) defines "property" to include both real and personal property. "'[R]eal property' includes lands, tenements, and hereditaments and all rights thereto and interests therein." Sec. 990.01(35). "'Personal property' includes money, goods, chattels, things in action, evidences of debt and energy." Sec. 990.01(27). We see nothing in these definitions which would conflict with the manifest intent of sec. 49.08(1), Stats. (1981–82), and we consider them to control. In whatever form Lange receives her wages, whether by cash or check, they fall squarely within the statutory definition of "property"

5

in secs. 990.01(27) and (31). As a result, they must also constitute "property" under sec. 49.08(1).[1]

Lange argues that such a construction undermines the purpose of ch. 49, Stats. (1981–82), which is "the achievement of self-support." We disagree. Requiring someone to pay back general relief out of wages does not necessarily prevent that person from becoming self-supporting. Most self-supporting people incur debts which must be paid from wages. Our reading of sec. 49.08(1) does not undermine the legislative goal of self-support.[2]

## II. ESTOPPEL

Equitable estoppel has three elements: "(1) *Action or nonaction* which induces (2) *reliance* by another (3) to his [or her] *detriment.*" *Mowers v. City of St. Francis,* 108 Wis. 2d 630, 633, 323 N.W.2d 157, 158 (Ct. App. 1982) (emphasis in original), quoting, *Gabriel v. Gabriel,* 57 Wis. 2d 424, 429, 204 N.W.2d 494, 497

---

[1]Lange claims that interpreting "property" to include wages, renders meaningless the legislature's subsequent amendment of sec. 49.08(1) to allow recovery actions when a person becomes self-supporting. 1983 Wis. Act 27, sec. 1023, effective July 2, 1983. We do not address this issue, since the 1983 statute is not before us.

[2]We note that the only authority cited by the city in support of its "wages-as-property" argument is an unpublished decision of this court. Section (Rule) 809.23(3), Stats., prohibits the citation of unpublished opinions, "except to support a claim of res judicata, collateral estoppel, or law of the case." Violations of this rule will not be tolerated. *Tamminen v. Aetna Casualty & Surety Co.,* 109 Wis. 2d 536, 563, 327 N.W.2d 55, 67 (1982). We therefore impose a $50 fine on the city's attorney and direct the sum to be paid to the clerk of this court within twenty days of the date this opinion is released.

(1973). Before estoppel may be applied to a governmental unit, it must also be shown that the government's conduct would work a serious injustice and that the public interest would not be unduly harmed. *Department of Revenue v. Moebius Printing Co.,* 89 Wis. 2d 610, 638, 279 N.W.2d 213, 225 (1979). Finally, the party asserting the defense of equitable estoppel must prove it by clear and convincing evidence. *Gabriel,* 57 Wis. 2d at 428, 204 N.W.2d at 497.

■ The trial court did not discuss the various elements of estoppel. Rather, its conclusion that Lange had met her burden of proof was based on its belief that she would not have accepted the welfare benefits had she known she might have to repay them at some later time. We reverse because Lange wholly failed to establish that she suffered any detriment as a result of the city's representations.

While we are unaware of any Wisconsin case specifically defining "detriment" in the context of a claim of equitable estoppel, the requirement has been equated with "prejudice." *State ex rel. Home Ins. Co. v. Burt,* 23 Wis. 2d 231, 236–37, 127 N.W.2d 270, 273 (1964). And the commonly-understood meaning of both terms is "injury or damage." *Webster's Third New International Dictionary* 617, 1788 (1976).

Lange's argument that she suffered a detriment—that she was "injured or harmed" by her reliance on the welfare worker's statement—is, in essence, that she was deprived of the opportunity to pursue "other options." Specifically, she contends that because she did not know at the outset that she might be called upon to repay the benefits, she lost not only the opportunity to arrange for deferred payments or otherwise contest the charges for her medical and

7

dental treatment, but also the opportunity to "struc-
ture her budget and pursue her personal plans and
goals without regard for any repayment obligation."
We are not persuaded.

First, we do not consider that Lange's statement
about interference with her personal budget planning
is sufficient to establish detriment to the required
degree of proof. Second, what Lange received, in
addition to basic subsistence payments, was the city's
payment for physical and dental surgery that had
been medically certified as necessary to her health.
She testified that she would have foregone all such
payments, instead seeking food and shelter from
friends and relatives and refusing the surgery on the
assumption that her condition would "go away by
itself." But we do not see Lange's receipt of subsis-
tence funds and needed medical treatment—even with
the requirement that she pay the city back when
financially able to do so—as a detriment in any sense
of the word.[3]

Nor do we believe that enforcement of the repay-
ment provision of sec. 49.08(1), Stats. (1981–82), would
work a serious injustice against Lange. As we have
said, Lange's receipt of a subsistence allowance and
necessary surgical treatment cannot be regarded as
detrimental to her. Unlike the defendants in the
several tax assessment cases cited by Lange (where
the government was held to be estopped from revising

---

[3]We note, too, that sec. 49.08(1), Stats. (1981–82), allows the
trial court some leeway in the matter, for it is required to consider
federal family budget requirements in ordering repayment, and it
may reject the city's claim in its entirety where the defendant's
parent, spouse or child is dependent on the property for support.
In this case, the trial court never reached these questions, ruling
instead that the city was estopped from bringing the action.

its earlier position),[4] all she is being asked to do here is, thirteen years later and at a time when she is financially able, to repay the benefits received earlier, as required by statute. When Lange applied for the funds, she established her eligibility for public assistance, and that assistance is, by law, available only to those persons "who have no other means of obtaining the necessitites of life." *State ex rel. Arteaga v. Silverman,* 56 Wis. 2d 110, 118, 201 N.W.2d 538, 542 (1972). When the city accepted the representations in Lange's application—and it had no reason to doubt them—it became obligated by law to provide the requested assistance. *Id.* at 115, 201 N.W.2d at 541. Because Lange failed to establish that she suffered a detriment as a result of the city's actions, we do not consider that it is unjust to seek repayment.

*By the Court.*—Order reversed and cause remanded for further proceedings. The attorney for the City of Madison is directed to transmit the $50 fine to the clerk of this court within twenty days.

---

[4]*Department of Revenue v. Family Hospital,* 105 Wis. 2d 250, 313 N.W.2d 828 (1982); *Libby, McNeill & Libby v. Dept. of Taxation,* 260 Wis. 551, 51 N.W.2d 796 (1952).