STATE of Wisconsin, Plaintiff-Appellant,

v.

James M. DROWN, Defendant-Respondent.

Court of Appeals

*No. 2010AP1303–CR. Submitted on briefs January 11, 2011.
—Decided March 29, 2011.*

2011 WI App 53

(Also reported in 797 N.W.2d 919.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jeffrey J. Kassel*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Shelley M. Fite*, assistant state public defender of Madison.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. The State of Wisconsin appeals an order dismissing its second-degree sexual assault complaint against James Drown on the theory of equitable estoppel. The State argues that, as a matter of

law, equitable estoppel cannot be applied to preclude the State from prosecuting a criminal charge. We agree and reverse.[1]

## BACKGROUND

¶ 2. The criminal complaint alleged the following facts. While investigating Drown's August 19, 2008 abduction of Jennifer B. from her residence in Shawano County, the Shawano County Sheriff's Department learned that Drown also sexually assaulted Jennifer in Oconto County. Jennifer told Shawano County investigators that Drown, who is her former boyfriend, entered her home, dragged her outside, pulled her into his car, and drove away. Drown continued to hold her as he drove to prevent her from jumping out of the car. He also hit Jennifer in the head and face. Drown eventually stopped the car next to a church in Oconto County. After exiting the car and chasing and dragging Jennifer, Drown pulled on the front of Jennifer's pants and underwear and placed his middle finger inside her vagina.

¶ 3. After the criminal complaint charging Drown with second-degree sexual assault by use of force was filed in Oconto County on February 26, 2009, Drown moved to dismiss. Drown asserted he had already been convicted in Shawano County case No. 2008CF191, pursuant to a plea bargain to charges of false imprison-

---

[1] The State also argues the circuit court erred by making factual findings, because Drown failed to present either affidavits or testimony in support of his motion. We reverse on other grounds and therefore need not resolve this issue. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (appellate courts not required to address every issue raised when one issue is dispositive).

ment and disorderly conduct.[2] Drown alleged the charges were based on "exactly the same incident as . . . in this case." Drown was convicted and sentenced in the Shawano County case on January 12, 2009.

¶ 4. Drown argued the State was equitably estopped from prosecuting him for sexual assault. He asserted he "had absolutely no way of knowing that this case would be filed at the time he entered into his bargain with the State in Shawano County," and that he reasonably and "justifiably relied upon accurate knowledge of the [S]tate's actions and his own legal position vis-à-vis those actions as it existed at the time of the plea and sentence in the Shawano case." Drown argued that "false imprisonment would amount to the use or threat of force for purposes of this case," and that "by conceding false imprisonment as a matter of strategy in Shawano County," he "was unknowingly conceding a critical element in this case as well."

¶ 5. The circuit court held a nonevidentiary hearing on Drown's motion. After hearing the parties' arguments, the court observed that

> because of the delay in [filing] the Oconto County charges, there was no reason for the defense counsel in Shawano County to consider whether or not he should be attempting to consolidate the charges between the two counties. The defense counsel didn't even—it wasn't even brought to mind I guess. It didn't happen.

The court concluded Drown reasonably relied on the State's inaction, and held the State was equitably estopped from prosecuting Drown for the sexual as-

---

[2] Additionally, charges of battery, criminal trespass to dwelling, possession of a switchblade knife, and criminal damage to property were dismissed and read in.

sault. The court therefore dismissed the Oconto County complaint with prejudice. The State now appeals.

## DISCUSSION

¶ 6. The State argues equitable estoppel can never be applied to preclude the State from prosecuting a criminal charge. Drown responds that the issue must be decided on a case-by-case basis, and that estoppel is appropriate here. When the facts are undisputed, or the circuit court's factual findings are not clearly errone-ous, we independently consider application of the equi-table estoppel doctrine. *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶ 21, 291 Wis. 2d 259, 715 N.W.2d 620.

¶ 7. There are four elements to equitable estop-pel: (1) action or nonaction, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, (4) which is to the relying party's detriment. *Id.*, ¶ 33. In Wisconsin, a party may raise an estoppel defense against the govern-ment "even when it acts in its governmental capacity." *DOR v. Moebius Printing Co.*, 89 Wis. 2d 610, 634, 279 N.W.2d 213 (1979). However, equitable estoppel is not granted as freely against the government as against private parties. *Id.* at 638. "[E]stoppel may be available as a defense . . . if the government's conduct would work a serious injustice and if the public's interest would not be unduly harmed by the imposition of estoppel." *Id.* Therefore, beyond the ordinary four-part test, when raising an estoppel defense against the government, "the court must balance the injustice that

might be caused if the estoppel doctrine is not applied against the public interests at stake if the doctrine is applied." *Id.* at 639.

¶ 8. However, we will "not allow[] estoppel to be invoked against the government when the application of the doctrine interferes with the police power for the protection of the public health, safety or general welfare." *Id.* This rule perhaps explains why Drown is unable to cite a single Wisconsin case where the State has been estopped from prosecuting a criminal charge or, for that matter, where the State has been equitably estopped in any capacity in a criminal case.[3]

¶ 9. Moreover, it appears other jurisdictions are likewise unreceptive to equitable estoppel arguments by criminal defendants. *See, e.g., State v. Yates*, 168 P.3d 359 (Wash. 2007). In rejecting the argument in *Yates*, the Washington Supreme Court observed, "No Washington case has applied the doctrine to criminal cases, and federal authority exists discrediting such an application." *Id.* at 374 (citing *United States v. Anderson*, 637 F. Supp. 1106 (D. Conn. 1986); *United States v. Alexander*, 736 F. Supp. 968 (D. Minn. 1990)). Further, the State represents it "has not been able to find any case in any jurisdiction other than Minnesota in which equitable

---

[3] Drown cites *State v. Fleming*, 181 Wis. 2d 546, 556, 510 N.W.2d 837 (Ct. App. 1993), as an example where the issue of equitably estopping the State was contemplated. However, the defendant there had asserted judicial estoppel. *Id.* We concluded the defendant confused judicial and equitable estoppel, but that neither doctrine would apply to preclude the State from requesting a lesser included offense instruction. *Id.* at 557. We declined to apply the equitable estoppel analysis because we concluded the defendant's reliance was unreasonable as a matter of law. *Id.* at 559–60.

estoppel has been applied . . . to preclude [criminal prosecution], and application of the doctrine in Minnesota has been limited to criminal zoning and tax cases." *See State v. Ramirez*, 597 N.W.2d 575, 577 (Minn. Ct. App. 1999) (citing *State v. Liepke*, 403 N.W.2d 252 (Minn. Ct. App. 1987)). Drown, apparently, was similarly unsuccessful.

¶ 10. We agree with the State that the public interest would be unduly harmed if the State were equitably estopped from prosecuting criminal charges. There is a compelling societal interest in convicting and punishing criminal offenders. *See Moran v. Burbine*, 475 U.S. 412, 426 (1986); *State v. Ward*, 2009 WI 60, ¶ 43 n.5, 318 Wis. 2d 301, 767 N.W.2d 236. On balance, the public interests at stake will always outweigh any potential injustice to a criminal defendant where he or she seeks to evade prosecution via equitable estoppel. This is especially true because defendants already benefit from various due process protections in the event of either inaction or action by the State that is allegedly unjust. Thus, extension of the equitable estoppel doctrine is unnecessary.

¶ 11. For example, here, Drown argues the State's prosecutorial delay, i.e., inaction, induced him to act to his detriment by pleading guilty in the Shawano County case, thereby essentially conceding an element in this case. In this situation, Drown is protected first by the statute of limitations. "The statute of limitations is the principal device, created by the people of a state through their legislature, to protect against prejudice arising from" a stale prosecution. *State v. Wilson*, 149 Wis. 2d 878, 903, 440 N.W.2d 534 (1989). That is not, however, the sole safeguard:

773

[B]eyond that protection, the Fifth Amendment requires the dismissal of [a complaint], even if it is brought within the statute of limitations, if the defendant can prove that the [State's] delay in bringing the [charge] was a deliberate device to gain an advantage over [the defendant] and that it caused ... actual prejudice in presenting his [or her] defense.

*Id.* at 904 (quoting *United States v. Gouveia*, 467 U.S. 180, 192 (1984)).

¶ 12. Thus, where, as here, a defendant "seeks to avoid prosecution based upon prosecutorial delay, 'it must be shown that the defendant has suffered actual prejudice arising from the delay and that the delay arose from an improper motive or purpose such as to gain a tactical advantage over the accused.' " *Id.* (quoting *State v. Rivest*, 106 Wis. 2d 406, 418, 316 N.W.2d 395 (1982)). Application of the equitable estoppel doctrine in such a case would conflict with this well-established rule of law. *See id.* (citing *Rivest*, 106 Wis. 2d at 418; *State v. Davis*, 95 Wis. 2d 55, 58, 288 N.W.2d 870 (Ct. App. 1980)); *State v. Monarch*, 230 Wis. 2d 542, 551, 602 N.W.2d 179 (Ct. App. 1999).

¶ 13. As with inaction, substantive due process also protects defendants from detrimental reliance on the State's affirmative action. *See Rivest*, 106 Wis. 2d at 413 ("cases concerning the enforcement of plea agreements require the application of the doctrine of due process"). Had the Oconto County prosecutor entered into a plea agreement with Drown prohibiting his prosecution for sexual assault in that county, Drown would likely have had an enforceable bargain. If the State materially and substantially breaches a plea agreement, the defendant may have the agreement

vacated. *See id.* Alternatively, the defendant may be granted specific performance: "An accused has a constitutional right to the enforcement of a negotiated plea agreement. Consequently, once an accused agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment of the bargain." *State v. Matson,* 2003 WI App 253, ¶ 16, 268 Wis. 2d 725, 674 N.W.2d 51.

■■ ■

¶ 14. Due process protections also apply where a prosecutor opts to rescind an offer prior to the circuit court's acceptance of the plea bargain: "The concept of fundamental fairness . . . prohibit[s] the government from breaking a promise which induced the defendant to take some action detrimental to himself in reliance on the bargain." *State v. Beckes,* 100 Wis. 2d 1, 6, 300 N.W.2d 871 (Ct. App. 1980). Further, where the State and the defendant agree to have a charge read in, subsequent prosecution is barred on the ground of due process. *Austin v. State,* 49 Wis. 2d 727, 734, 736, 183 N.W.2d 56 (1971). "This is particularly true where the accused, in reliance on such a pledge, has carried out his part of the agreement, and, in doing so, may have relinquished valuable fundamental rights." *Id.* at 736. Thus, had the State affirmatively represented to Drown that he would not be charged with the Oconto County sexual assault charge, he had adequate due process protections and would not need the aid of the equitable estoppel doctrine.

¶ 15. In any event, even were we to conclude equitable estoppel is available to preclude criminal prosecution, we would likely hold Drown's reliance unreasonable as a matter of law. *See State v. Fleming,* 181 Wis. 2d 546, 559–60, 510 N.W.2d 837 (Ct. App. 1993). Given Drown's argument, failure to assert igno-

rance, and failure to raise an ineffective assistance of counsel claim, it is apparent he was aware that the Oconto County prosecutor retained the legal right to prosecute Drown at any time prior to the expiration of the six-year statute of limitations.[4] *See* Wis. Stat. § 939.74(1) (2009–10). Drown's decision to proceed with a plea to the Shawano County charges alone, rather than address the possible sexual assault charges, was strategic—by his own admission. That Drown knowingly gambled and then lost would not somehow constitute a valid reason to shield him from prosecution for the alleged sexual assault.

*By the Court.*—Order reversed and cause remanded.

---

[4] In his motion to dismiss, Drown asserted that the defense strategy in the Shawano County case "was devised and executed in reliance on . . . Drown's then-current situation, in which no sexual assault was charged," and that "[n]o competent counsel would have allowed . . . Drown to plead guilty to false imprisonment in the Shawano case knowing the charge in this case was to follow as a separate prosecution."