PER CURIAM.
¶1 The City of Madison appeals an order granting summary judgment dismissing its claims against five stagehands employed by the City. The City's claims seek recovery from the employees of contributions to the Wisconsin Retirement System (the retirement system) that the City made on behalf of the employees. The City made these contributions after the state Department of Employee Trust Funds (ETF) determined in 2013 that the stagehands had been employees eligible to participate in the retirement system, one of them as long ago as 1980. We will refer to these contributions as the "employee back contributions." The City argues that the stagehands are not entitled to summary judgment dismissing the City's claims for recovery of the employee back contributions. The City also argues that it is entitled to summary judgment in its favor on those claims. The stagehands argue that they are entitled to summary judgment and that the City is not.
¶2 We conclude on de novo review that neither the City nor the stagehands are entitled to summary judgment. In particular, one of our major conclusions is that there are genuine factual disputes about whether the stagehands reasonably relied on the City's decision to treat them as independent contractors before ETF determined that they were employees. For at least this reason, neither side establishes, based on the summary judgment evidence, that the City is or is not equitably estopped as a matter of law from pursuing its claims to recover the employee back contributions from the stagehands. Based on all of our conclusions, we reverse the court's grant of summary judgment to the stagehands, affirm its denial of summary judgment to the City, and remand for further proceedings.
BACKGROUND
¶3 Working at the direction of the City during various periods, David Gersbach, Joseph McWilliams, Christopher Gautier, Ralph Johnston, and Gary Cleven were stagehands at venues operated by the City. The earliest started as a City stagehand in 1980, and by 2003 all five were doing this work.
¶4 As a "participating employer" in the retirement system, the City was obligated under WIS. STAT. § 40.22(5) (2017-18) to determine if the stagehands were City employees who had "met or will meet the actual or anticipated" requirements necessary to participate in the retirement system.[1] See also WIS. STAT. §§ 40.02(26), (46) - (47). After an employer identifies an employee as eligible to participate in the retirement system, the employer is to report the employee's participation to ETF, along with the employee's wages and hours on an ongoing basis. See § 40.06(1)(a), (2); WIS. ADMIN. CODE § 10.60(1)(a) (May 2015). The reported wages and hours are used to calculate employee and employer contributions that are made to the retirement system for each participating employee. WIS. STAT. § 40.05(1) - (2). In contrast, the City is not obligated to identify independent contractors as employees to ETF or to report their wages and hours because independent contractors are not eligible for participation in the retirement system. See §§ 40.02(26)(b), 40.22(2)(e). This means that no contributions are made to the retirement system for independent contractors by either the contractors or the City.
¶5 The City consistently treated each of the five stagehands as an independent contractor rather than as a City employee, and did not report their wages and hours to ETF from the start of their City work until 2009.[2]
¶6 In 2010, the stagehands initiated ETF administrative actions challenging the City's decision to treat the stagehands before 2009 as independent contractors, ineligible for participation in the retirement system. See WIS. STAT. § 40.06(1)(e)1. (authorizing employees to initiate ETF administrative actions to review employer determinations that employees are not participants in retirement system). In 2013, ETF issued an order determining that the City had misclassified the stagehands as independent contractors up to 2009, and that the stagehands were City employees eligible for participation in the retirement system before 2009. ETF identified the retroactive start dates for each stagehand's participation in the retirement system and ordered the City to report the stagehands as participating employees consistent with these start-dates.
¶7 Despite the ETF order, the City did not initially report the stagehands' pre-2009 wages and hours to ETF. As a consequence, four of the five stagehands brought this mandamus action, seeking to compel the City to do so. The City brought counterclaims against the four stagehands, as well as a third-party claim against the fifth stagehand, bringing him into this action.[3]
¶8 The City's counterclaims are based on WIS. STAT. § 40.06(5), part of the statute that addresses reports and payments to public employee trust funds. Section 40.06(5) provides in pertinent part: "Whenever it is determined that contributions and premiums were not paid in the year when due, the amount to be paid shall be determined" based on the contribution rates and interest rates from the pertinent time period. Further, "[t]he employer shall collect from the employee the amount which the employee would have paid if the amounts had been paid when due, plus the corresponding interest, and shall transmit the amount collected to the department." Id. The City contends that this "employer shall collect" language entitles it to recover from the stagehands employee back contributions to ETF that the City made on behalf of the stagehands.
¶9 More specifically, relying on the "employer shall collect" statutory language, the City's counterclaims seek circuit court orders requiring the stagehands themselves to pay the City the yet-to-be-determined employee back contributions to ETF based on the pre-2009 wages and hours, before the City reported those wages and hours to ETF. In the alternative, in the event that the City was forced, up front, to make employee back contributions to ETF before the stagehands paid the City, the City requested money judgments against the stagehands for the City's up front contributions. The stagehands asserted various defenses against the City's counterclaims, which in pertinent part included that they are barred by a statute of limitations and equitable estoppel.
¶10 The City subsequently did report to ETF the stagehands' wages and hours, dating from their ETF-established eligibility start dates. ETF then invoiced the City for the employee back contributions owed before 2009. The City paid these employee back contributions to ETF, and then the City invoiced the stagehands for the amounts paid. The stagehands refused to pay the City for the employee back contributions that the City had made to ETF on their behalf.
¶11 With this background in mind, we come to the focus of the narrow issues presented in this appeal. After the City reported the stagehands' pre-2009 wages and hours to ETF, the only issue remaining for the circuit court in this action was to resolve the City's counterclaims under the "employer shall collect" language in WIS. STAT. § 40.06(5), requesting money judgments against the stagehands to cover the employee back contributions made by the City for the pre-2009 wages and hours.
¶12 The stagehands filed a summary judgment motion to dismiss the City's counterclaims. The City filed a summary judgment motion for an order requiring the stagehands to refund the City for the employee back contributions. The circuit court granted the stagehands' motion for summary judgment and denied the City's motion for summary judgment. Accordingly, the court dismissed the City's counterclaims.
¶13 The court granted summary judgment to the stagehands on two independent grounds: (1) the City is equitably estopped from pursuing the counterclaims because there is no issue of material fact as to whether the City treated the stagehands as independent contractors before 2009-the City did-and that this treatment of the stagehands as independent contractors induced reasonable reliance by the stagehands to their detriment; (2) the City had "unclean hands" in pursuing the counterclaims because the counterclaims were based on the City's own longstanding misclassifications of the stagehands as independent contractors.
¶14 Separately, in favor of the City, the court rejected other affirmative defenses argued by the stagehands, notably the stagehands' claim that a statute of limitations barred the City's counterclaims.
¶15 The City appeals the order dismissing its counterclaims and denying its motion for summary judgment.
DISCUSSION
¶16 The City contends that the stagehands are not entitled to summary judgment dismissing the City's counterclaims and that the City is entitled to summary judgment in its favor.
¶17 The stagehands argue that we should affirm both the grant of summary judgment in their favor and the denial of the City's summary judgment motion.
¶18 We first address the stagehands' summary judgment motion, and explain why we conclude that the City is able to point to factual disputes regarding whether the stagehands reasonably relied on the City's actions or non-actions, and that these factual disputes preclude summary judgment for the stagehands based on equitable estoppel. We further conclude that the stagehands fail to establish their other asserted grounds for summary judgment, namely, the affirmative defenses that the City lacked "clean hands" or that the statute of limitations expired before the counterclaims were filed. Accordingly, we reverse the circuit court's grant of the stagehands' summary judgment motion.
¶19 We then address the City's motion for summary judgment. We explain why we conclude that the stagehands can point to issues of material fact regarding the stagehands' alleged reasonable reliance. We also explain why we reject the City's argument that, as a unit of government, it cannot be estopped under these circumstances. Accordingly, we affirm the circuit court's denial of the City's summary judgment motion.
¶20 We emphasize that we limit the scope of this opinion to rejection of both sides' summary judgment motions for specific reasons that we now address. In addition, we intend to express no opinion as to the nature or type of proceedings that the circuit court may deem are appropriate upon remand, such as permitting or disallowing further discovery or summary judgment motions, or about the timing or nature of a trial or other modes of fact-finding.
¶21 "We review summary judgment de novo, viewing the facts in the light most favorable to the non-moving party," and making all reasonable inferences in the non-movant's favor. See Affordable Erecting, Inc. v. Neosho Trompler, Inc. , 2006 WI 67, ¶19, 291 Wis. 2d 259, 715 N.W.2d 620. The purpose of summary judgment is to " 'avoid trials where there is nothing to try.' " Lodl v. Progressive N. Ins. Co. , 2002 WI 71, ¶16, 253 Wis. 2d 323, 646 N.W.2d 314 (quoted source omitted). To that end, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). A factual issue is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. Schmidt v. Northern States Power Co. , 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294.
¶22 "When the facts and reasonable inferences therefrom are not disputed, it is a question of law whether equitable estoppel has been established." Milas v. Labor Ass'n of Wis., Inc. , 214 Wis. 2d 1, 8, 571 N.W.2d 656 (1997) (citation omitted). "Because we are reviewing a grant of summary judgment, however, if the facts are disputed, then summary judgment is improper." Affordable , 291 Wis. 2d 259, ¶21.
I. The Stagehands' Motion For Summary Judgment
¶23 The stagehands make three primary arguments for summary judgment in their favor: (1) there is no dispute that the City is equitably estopped from pursuing its counterclaims based on the stagehands' reasonable reliance to their detriment on the City's treating them as independent contractors before 2009; (2) the City lacks "clean hands" to pursue the counterclaims; and (3) the City filed its counterclaims after the pertinent six-year statute of limitations had run. We address these arguments in turn.
A. Equitable Estoppel
¶24 The stagehands argue that they are entitled to summary judgment because there is no issue of material fact on the issue of whether the City is equitably estopped from bringing its counterclaims. We reject this argument because the City identifies genuine issues of material fact regarding the stagehands' equitable estoppel defense.
¶25 "There are four elements of equitable estoppel: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment." Affordable , 291 Wis. 2d 259, ¶33. "The party asserting estoppel," here the stagehands, "must prove the elements of estoppel by clear, satisfactory and convincing evidence." Milas , 214 Wis. 2d at 11 n.14.
¶26 The stagehands fail to provide legal authority defining reasonable reliance. Instead, the stagehands apparently suggest that, under any possible definition of reasonable reliance, and even if all disputed factual issues were resolved in the City's favor, the only possible conclusion is that the City's treatment of the stagehands as independent contractors alone proves that the stagehands reasonably relied on such treatment in not paying into the retirement system, at least until 2009. This suggestion is conclusory and undeveloped, and therefore we could reverse on this ground alone. As the moving party for summary judgment, the stagehands must provide a developed legal argument explaining why summary judgment is required.
¶27 Moreover, regardless of the precise meaning of reasonable reliance in the equitable estoppel context, the particular reasonable reliance arguments that the stagehands make all fail, because each depends on specific, material facts that the stagehands fail to demonstrate are undisputed. That is, by their own account, the stagehands' arguments in favor of a finding of reasonable reliance depend on a fact-finder rejecting evidence and reasonable factual inferences from material evidence to which the City points. This ignores the rule, summarized above, that summary judgment is not available when material facts are in dispute.
¶28 Notably, the City points to evidence submitted to the circuit court that raises the following reasonable inferences: at least as of some time between 2007 and 2010, the stagehands were aware that they had available the vehicle of ETF administrative review to determine whether the stagehands were independent contractors or City employees and that ETF would likely determine that they were City employees.
¶29 This evidence includes the findings of fact, not disputed by the stagehands, on which ETF relied in reaching its 2013 decision that the stagehands were employees for purposes of the retirement system. ETF found that: (1) the stagehands were aware that the City did not treat them as City employees and that this meant they did not receive retirement benefits from the City; (2) in administrative decisions issued in 2004 and 2007, the Wisconsin Employment Relations Commission (WERC) determined that the stagehands were City employees for the purposes of determining whether their union could collectively bargain with the City; and (3) during collective bargaining between the City and the stagehands' union, a union representative told a City representative that, if the City did not provide a sufficient retirement benefits package through collective bargaining, the stagehands would pursue ETF administrative review of their City employment status.
¶30 As the City argues, this evidence supports the following reasonable inference. During the collective bargaining process running from 2007 to 2010, the stagehands deliberately held back from initiating administrative ETF reviews, which the WERC decisions strongly suggested the stagehands could win, in an attempt to leverage a better collective bargaining agreement from the City.
¶31 The stagehands assert that they would not have benefited by waiting to file ETF administrative actions, and in part point to Cleven's testimony that he genuinely believed representations from City representatives that the stagehands were not City employees. However, a fact-finder would need to weigh this evidence against the contrary evidence identified by the City suggesting that the stagehands were aware that they should be treated as City employees and that ETF would likely agree.[4]
B. "Clean Hands"
¶32 As an alternative argument for summary judgment, the stagehands contend that the City cannot pursue its counterclaims because it has "unclean hands." Under the "clean hands" doctrine, a "plaintiff in equity" is denied relief when it is clearly shown " 'that the things from which the plaintiff seeks relief are the fruit of its own wrongful or unlawful course of conduct.' " Security Pac. Nat'l Bank v. Ginkowski , 140 Wis. 2d 332, 339, 410 N.W.2d 589 (Ct. App. 1987) (quoted source and emphasis omitted). We reject this argument because the City's counterclaims do not seek equitable relief. Rather, as we have explained, the City seeks money judgments against the stagehands corresponding to the employee back contributions paid to ETF based on the "employer shall collect" statutory language. Accordingly, the clean hands doctrine cannot be a basis to grant summary judgment dismissing the City's counterclaims. See State v. Kaczmarski , 2009 WI App 117, ¶16, 320 Wis. 2d 811, 772 N.W.2d 702 (criminal defendant's claim could not be barred by unclean hands because he did not seek equitable relief).
C. Statute Of Limitations
¶33 As another alternative ground for summary judgment, the stagehands argue that WIS. STAT. § 893.93(1m)(a) bars the City's counterclaims against the stagehands.[5] We disagree because disputes of material fact preclude a determination that the City's counterclaims are time barred.
¶34 WISCONSIN STAT. § 893.93(1m)(a) is a catch-all statute of limitations that applies to a statutory claim when no other limitation period is provided by law. There is no dispute that no limitation period is provided by law for claims brought under WIS. STAT. § 40.06(5), leaving the § 893.93(1m)(a) catch-all as the applicable statute of limitations here.
¶35 The application of WIS. STAT. § 893.93(1m)(a) to claims brought under WIS. STAT. § 40.06(5) requires the interpretation of the latter statute, and therefore presents a question of law. See Krahenbuhl, DDS v. Wisconsin Dentistry Examining Bd. , 2004 WI App 147, ¶19, 275 Wis. 2d 626, 685 N.W.2d 591. Summary judgment based on a statute of limitations is inappropriate where there are material and genuine issues of fact or competing inferences regarding when the cause of action accrued. See Schmidt , 305 Wis. 2d 538, ¶3 ; Sawyer v. Midelfort , 217 Wis. 2d 795, 814, 579 N.W.2d 268 (Ct. App. 1998), aff'd , 227 Wis. 2d 124, 595 N.W.2d 423 (1999).
¶36 As a general matter, a cause of action accrues when there exists a claim capable of present enforcement, a party that can be sued for the claim, and a party who has a present right to enforce the claim. See Benson v. City of Madison , 2017 WI 65, ¶54, 376 Wis. 2d 35, 897 N.W.2d 16.
¶37 To repeat, WIS. STAT. § 40.06(5) provides in pertinent part: "Whenever it is determined that contributions ... were not paid in the year when due," the amount to be paid shall be calculated with interest, and further, the "employer shall collect" what the employee would have paid, or the employer shall pay that amount on the employee's behalf. As we explain further below, we assume, without deciding, that the stagehands correctly interpret this statute as referring to a determination by the City that the stagehands were employees eligible to participate in the retirement system, and reject the stagehands' argument based on statutory interpretation.
¶38 Explaining further, the stagehands assert that "the City's knowledge" that the stagehands were City employees triggered the running of the six-year statute of limitations. They further assert that the City "knew or should have known" that the stagehands were employees no later than the second WERC decision in 2007. The stagehands point to the fact that the City participated in the WERC hearings that resulted in the commission determining that the stagehands were City employees, at least for collective bargaining purposes under WIS. STAT. § 111.70(1)(i). Accrual in or before 2007 would render the City's counterclaims barred under WIS. STAT. § 893.93(1m)(a), because the counterclaims were filed in 2016, more than six years after the 2007 WERC decision.
¶39 We reject the stagehands' argument that the statute of limitations is triggered when the City should have made the determination that the stagehands were City employees and therefore eligible to participate in the retirement system. The stagehands effectively ask us to add language to WIS. STAT. § 40.06(5) so that it would begin with the phrase, "Whenever it should be determined ...." However, we are bound to apply the statute as it is plainly written. See State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110. Section 40.06(5) provides that the trigger for action by the employer and ETF is "[w]henever it is determined that" contributions were not paid when due. (Emphasis added.) Assuming without deciding that the City's actual determination could trigger the statute of limitations by giving the City a presently enforceable right against the stagehands, the stagehands must show that there is no genuine issue of fact that the City actually made the pertinent determination to prevail on summary judgment. This the stagehands fail to do. And, in the other direction, there is a reasonable inference from the evidence that, up to the time when ETF issued its employee-status decision in 2013, the City's determination continued to be that the stagehands were independent contractors. The City contested the classification of the stagehands as employees before both WERC and ETF. Further, as the ETF decision notes, both WERC decisions acknowledged that some facts favored classifying the stagehands as independent contractors under the multi-factor test.
¶40 In sum, there is an issue of fact as to whether the City determined that the stagehands were employees for retirement system purposes before 2007. On this ground, we reject the stagehands' argument for summary judgment based on the statute of limitations.
II. The City's Motion For Summary Judgment
¶41 The City argues that it is entitled to summary judgment because the undisputed material facts, construing all inferences in favor of the stagehands, demonstrate that the stagehands did not reasonably rely on action or non-action by the City and therefore could not prove the elements of equitable estoppel. The City argues in the alternative that, under a balancing test that must be applied before a government can be equitably estopped, the City cannot be estopped from enforcing its rights under WIS. STAT. § 40.06(5).[6] We reject both sets of arguments.
¶42 The City's arguments for summary judgment do not account for disputes of genuine material fact regarding the reasonable reliance issue raised by the stagehands. The summary judgment materials include evidence that could support findings that include the following: stagehand Cleven reasonably relied on representations made by City representatives that the stagehands were independent contractors because Cleven had confidence in the City's awareness and willingness to properly classify the stagehands for retirement system purposes; and it would have made little strategic sense for the stagehands to intentionally delay seeking ETF review, because of the interest accruing on the unpaid employee back contributions that the stagehands might have to pay, and because of a statutory limitation of seven years that ETF could apply to some of the stagehands' actions. See WIS. STAT. § 40.06(1)(e)1. (relief available to employees exclusively for the 7 years before they seek ETF review). Drawing inferences in the stagehands' favor, this evidence supports the possibility that the stagehands, at least for some period of time before 2009, reasonably relied on the City's independent contractor misclassifications.
¶43 The City also argues that, even if the stagehands could prove the elements of equitable estoppel, the balancing test for considering whether units of government may be estopped, in light of the public's interests, weighs in the City's favor. We have described this test in the following terms:
In Wisconsin, a party may raise an estoppel defense against the government "even when it acts in its governmental capacity." DOR v. Moebius Printing Co. , 89 Wis. 2d 610, 634, 279 N.W.2d 213 (1979). However, equitable estoppel is not granted as freely against the government as against private parties. Id. at 638. "[E]stoppel may be available as a defense ... if the government's conduct would work a serious injustice and if the public's interest would not be unduly harmed by the imposition of estoppel." Id. Therefore, beyond the ordinary four-part test, when raising an estoppel defense against the government, "the court must balance the injustice that might be caused if the estoppel doctrine is not applied against the public interests at stake if the doctrine is applied." Id. at 639.
State v. Drown , 2011 WI App 53, ¶7, 332 Wis. 2d 765, 797 N.W.2d 919.
¶44 The City contends that the public's interests in the City collecting employee back contributions from the stagehands outweigh the harm caused to the stagehands if the City is not estopped from that collection effort. The City's arguments on this point essentially boil down to a contention that the public has an interest in seeing the promotion of the public policies underlying WIS. STAT. ch. 40 generally, and WIS. STAT. § 40.06(5) specifically, which would be undermined if the stagehands are allowed to estop the City from collecting the employee back contributions from them. See Grams v. Melrose-Mindoro Joint School Dist. No. 1 , 78 Wis. 2d 569, 581, 254 N.W.2d 730 (1977) ("A party cannot be estopped from asserting public policy as expressed in the statutes."). For example, the City argues that Chapter 40 promotes a policy of participating employees paying into their own retirement benefits, particularly with the passage of "Act 10," which generally reduced the financial obligations of municipalities to their employees. See 2011 Wis. Act. 10, § 74. Similarly, the City contends that the legislative intent behind § 40.06(5) is to accommodate employers, such as the City, when they make mistakes in classifying employees, allowing employers to require employees to pay for employee back contributions.
¶45 The City identifies legitimate public policy interests, expressed by the legislature in WIS. STAT. § 40.06(5), in permitting employers, at their option, to recover employee back contributions. However, we note that it is only an option for the employer, and employers can elect to pay employee back contributions. The decision of the legislature to permit employers such as the City to not collect employee back contributions paid by the employer is consistent with the result that the stagehands here seek through asserting equitable estoppel. See Holtzman v. Knott , 193 Wis. 2d 649, 689-90, 533 N.W.2d 419 (1995) (Grams inapposite where statutes do not explicitly prohibit an outcome desired by a party). In sum, we fail to discern a clear, strong public policy preference expressed in § 40.06(5) that weighs against estoppel of the City, if the elements for estoppel are met.[7]
¶46 Countering the City's balancing test arguments, the stagehands point to evidence that ordering them to pay the employee back contributions will have profoundly negative effects on them individually. For example, the stagehands assert, based on ETF calculations, that the total amount that the City seeks from Cleven would be equivalent to two thirds of the annuity payments he stands to receive from the retirement system when he begins drawing on his retirement benefit. While we are uncertain of all the assumptions or calculations that go into the stagehands' estimate, the City does not attempt to dispute this assertion. And, more generally, the City does not dispute the implied premise of the stagehands' argument that the amounts that the City now seeks from the stagehands are large relative to their financial means. Assuming that the stagehands are able to establish that they reasonably relied on the City's treatment of them as independent contractors, then we see no reason not to weigh in the balancing test the potential unfairness in requiring them to pay a large and unexpected sum of money due to the City's misclassifications. Further, the stagehands note that the total cost to the City of paying employee back contributions is mitigated by the seven-year look-back limitation, referenced above, that ETF did apply to several of the stagehands.
¶47 For these reasons, we conclude that the City has failed to establish that it should be granted summary judgment because the public's interest outweighs the potential harm to the stagehands under the balancing test, in the event that the stagehands were able to establish each element of equitable estoppel on remand. We emphasize that, as with our other conclusions, our rejection of the City's balancing test arguments is based strictly on the evidence developed to date and the particular arguments made on appeal.
¶48 Based on our conclusion regarding the balancing test, coupled with our determination that there are genuine issues of material fact pertaining to whether the stagehands reasonably relied on the City's conduct, we affirm the circuit court's decision to deny the City's motion for summary judgment.
CONCLUSION
¶49 For these reasons, we reverse the grant of summary judgment in favor of the stagehands, affirm denial of summary judgment in favor of the City, and remand for further proceedings.
By the Court. -Order affirmed in part; reversed in part; and cause remanded.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

From 2007 to 2010, the City and a union representing the stagehands negotiated a collective bargaining agreement. Neither side on appeal precisely clarifies the significance of this agreement to issues raised by this appeal, but the record shows that, under the agreement, the City began reporting to ETF the stagehands' wages and hours earned starting in December 2009. The collective bargaining agreement did not address the stagehands' wages and hours predating December 2009, which remained unreported to ETF until 2016, after the initiation of the instant mandamus action, as we discuss further below in relating background information.

For ease of reference, we will use the term "counterclaims" to describe all of the City's claims against the five stagehands, both the third-party complaint and the counterclaims.

In a separate, undeveloped estoppel argument, the stagehands assert that Wis. Stat. ch. 40 imposes on the City fiduciary duties to the stagehands, and that because the City allegedly violated these purported duties it should be estopped from collecting the employee back contributions from the stagehands. However, the stagehands point to no authority for the general proposition that an employer who participates in a retirement system becomes the fiduciary of the interests of its participating employees, much less do they point to specific authority that would appear to apply in the context of this case. Cf. Wisconsin Prof'l Police Ass'n, Inc. v. Lightbourn , 2001 WI 59, ¶120, 243 Wis. 2d 512, 627 N.W.2d 807 (ETF must administer the retirement system as a trustee administers a trust); Wis. Stat. § 40.01(2) ("The public employee trust fund is a public trust and shall be managed, administered, invested and otherwise dealt with solely for the purpose of ensuring the fulfillment at the lowest possible cost of the benefit commitments to participants."). We do not consider this argument further. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not consider arguments unsupported by reference to legal authority).

Wisconsin Stat. § 893.93(1)(a) (2015-16) was renumbered to Wis. Stat. § 893.93(1m)(a) (2017-18), and the length of the period of limitations reduced from 6 years to 3, but neither of these changes matter to our analysis.

The City apparently also intends to make two other arguments for summary judgment in its favor that are underdeveloped or undeveloped.
First, the City may intend to argue that the "action or non-action" element of equitable estoppel is not met here because the City misclassified the stagehands as independent contractors in "good faith." We struggle to understand aspects of this argument. In any case, however, the City provides no legal support for the proposition that an action taken in "good faith," however the City contends we should define good faith in this specific context, is not an action for estoppel purposes. We reject this argument as unsupported. See Pettit , 171 Wis. 2d at 646. Moreover, the City does not address a contention of the stagehands that would appear to significantly undermine any good-faith argument. The stagehands' argument is based on an aspect of the definition of employee and independent contractor in Wis. Stat. § 40.02(26) that ETF considered to be dispositive. This statutory analysis was separate and apart from ETF applying the same common law, multi-factored test used in the WERC decisions to determine employment status for the purpose of collectively bargaining with municipalities. ETF observed that it "appear[ed] that the common law test is not even reached if the individual is on the employer's payroll ," and that the stagehands have been paid out of the City's payroll all along. (Emphasis added.) The stagehands argue that this point should have been obvious to the City and therefore the City cannot claim that it erred in "good faith."
Second, for the first time on appeal, the City raises another hard-to-track argument, to the effect that the stagehands have not sufficiently proven that they have suffered a detriment, relying on Madison v. Lange , 140 Wis. 2d 1, 408 N.W.2d 763 (Ct. App. 1987). The stagehands respond that Lange is distinguishable. In reply, the City does not dispute the stagehands' efforts to distinguish Lange , nor does the City further develop its detriment argument. Accordingly, we deem the City to have conceded the argument for purposes of this appeal, and we address it no further.

The City makes a separate argument regarding the estoppel-against-government balancing test that we reject as underdeveloped. We take the City to argue that the stagehands' estoppel defense would effectively violate or "reform" the City's collective bargaining agreement with the City. However, the City fails to clearly explain why we should reach this conclusion. The City does not clarify whether the collective bargaining agreement was meant to, or should, have any effect on the stagehands' ability to seek administrative review from ETF or to assert equitable estoppel as an affirmative defense against the City's counterclaims.